Marshall, C. J.
 

 No witness gave any direct testimony bearing upon the cause of-the explosion. Several opinions were expressed by persons having no expert knowledge, and whose opinions could nbt aid the jury, because the jury could reason as well as they. Upon the issue of contributory negligence the only testimony is that of the witness Heusch, who testified that, as he was leading Mc-Evoy into the house, after the accident, the following conversation took place:
 

 “Joe, how did this happen? ‘Well,’ he.says, ‘I got down—I went in and got down on the third step—and lit a match;’ and he says, ‘That is all I knoyr of it.’ ”
 

 Manifestly, lighting a match in a cellar, without any evidence of the fumes of gas and without any other evidence indicating a peril from producing a flame in the cellar, would have no probative effect in raising the inference of contributory negligence, unless it also be inferred from the mere fact of explosion that there must have been gas and that McEvoy must have detected the odor before striking the match. Even so, it would have been a
 
 *427
 
 matter to be submitted to the jury under proper instructions, and no court should declare as a matter of law that a recovery was defeated on the ground that plaintiff’s testimony raised a presumption of contributory negligence. The case must be disposed of upon the issue of the defendant’s negligence.
 

 The direct testimony on this issue is that there was an explosion of tremendous violence, which blew McEvoy out of the cellar, and which blew out the doors and windows, and lifted the roof, and bulged out the sides of the building. There is no positive evidence as to the character of the gas which caused the explosion. It is possible that it might have been either natural gas, or sewer gas, or gasoline fumes. Three or four days, possibly a week, before the explosion, a noise was heard in the cellar which was believed to indicate an escape of gas. A plumber was called who had no connection with the gas company, and upon inspection found all gas pipes in good condition and no gas escaping, and found that the noise was caused by leaky water pipes, which he repaired. The meter reader had read the meter for the month of September, and detected no odor of escaping gas, and therefore made no careful inspection of the condition of the pipes. Assuming that the plumber who was called at a later date made a careful inspection, it may be considered as proven that there was no defect in the gas pipes or meter and no escaping gas a few days before the explosion. When the meter reader returned on October 19, to again read the meter, the trapdoor leading to the cellar was covered with rubbish,
 
 *428
 
 and McEvoy asked the meter reader to return a little later, and said that he would clear the door in the meantime. It was during this short absence of the meter reader that McEvoy entered the cellar with the lighted match causing the explosion. All of the meter reading was done by Mr. Vogel, the superintendent of the gas company at St. Marys.
 

 Mr. Vogel was called by the plaintiff for cross-examination under Section 11497, General Code, relative to certain matters pertaining to the explosion and occurrences which followed the same. Assuming that he was an officer within the meaning of that section, the plaintiff was not concluded by his answers, but that section can afford no comfort to plaintiff, because there was no effort to introduce any evidence to contradict his testimony. Vogel testified that he found no evidence of leaking gas when he read the meter in September, and that he did not read the meter in October, for the reason already stated. He further testified that immediately after the accident, within a half hour or three-quarters of an hour thereafter, he went to the cellar in company with a Mr. Jones and a Mr. Caldwell and made a test of the meter and pipes, and found no evidence of escaping gas. Later he went to the basement in company with one Malone, superintendent of the Lima Natural Gas Company, and one Mr. Brady, and made further tests by means of lighted matches, and then took off the meter and made more elaborate pressure tests to ascertain whether there was any leak in the pipes, and says that no evidence of leakage was found. He also testified that the meter was taken out and never returned, and that, when the
 
 *429
 
 company a day or two later again began to supply gas, a new meter was installed. It is claimed by plaintiff below that these facts justify the inference that the meter was defective and was the cause of the alleged leakage and the resultant injuries. It is further insisted, under the rule which prevails in Ohio, that the matter should have been submitted to a jury under instruction's that they might base a reasonable inference of negligence upon the removal of the meter under such circumstances.
 

 This view, if maintainable, is under the well-known scintilla rule established in Ohio, and which must be applied and respected by courts, regardless of their bélief in the soundness of the rule. There are several considerations which militate against the application of the rule to the record in the instant case. Negligence is never presumed from the mere fact of an accident and resulting injury. The burden is upon the plaintiff to prove negligence on the part of the defendant as the direct and proximate cause of the injury. The law presumes that persons upon whom the duty of exercising care is thrown do in fact exercise such care, and while the burden of proof is upon the one alleging lack of care, that negligence may be shown either by evidence direct in its nature or by proof of circumstances from which a reasonable inference of want of care may be drawn. It must be borne in mind in the instant case that there is no direct evidence that the meter was defective or that it permitted an escape of natural gas. It is shown that the meter belonged to the company, and it owed the duty of providing a meter of standard kind and character and in ser
 
 *430
 
 viceable condition. The witness Vogel has testified that this particular meter was in good condition at the time he made the inspection a month before the accident, and that it was in good condition, as shown by the ordinary tests, immediately after the accident, and by more elaborate tests a few hours later. It appeárs from the record that both tests were made in the presence of other persons whose names were disclosed during the trial.
 

 All of the direct evidence in the case, if believed, clearly proves that, not only the meter, but the pipes, were in sound and safe condition. It is true, under the statute above referred to, that the plaintiff was not bound by this testimony, and that he might have introduced other evidence to rebut it. Not having done so, and there being no evidence even tending to rebut it, except possible inferences to be drawn from the accident, the testimony of Vogel must be accepted as competent substantive testimony, having probative value. It has not been shown that the meter was destroyed or placed beyond the processes of the court; neither is it shown that the other persons who helped to make the test were not available at the trial. It is apparent, therefore, that the record, not only admits of no inference of negligence, but even contains direct evidence of the good condition of the meter and the pipes.
 

 Finding in this record no direct evidence of want of due care on the part of the gas company, let us inquire what facts, if any, are found from which an inference can be drawn. It is quite clear from this record that the decedent received his
 
 *431
 
 injuries from an explosion of gas. The gas company can only be held responsible in the event that it Avas an explosion of natural gas. There would manifestly be no responsibility on the part of the gas company from an explosion of sewer gas or gasoline fumes. The persons who have testified have not in any case been positive in their evidence as to natural gas, and the record discloses a possibility of the explosion being either from sewer gas or gasoline fumes. It is shown that there were such sewer connections as would make seAver gas possible, and, while it is stated that gasoline was not stored in the garage, it is shown that an automobile was stored in the garage, which used gasoline as a motive power. Mrs. McEvoy testified that the trapdoor leading to the cellar was not a tight door, but that it was merely laid down upon cleats thrown across the opening. This would indicate that natural gas would have escaped from the cellar as fast as it escaped from the pipes. The nature of gasoline fumes is shoAvn to be such that they would remain in the cellar instead of rising through the opening. These properties of the different kinds of gas indicate that an explosion from gasoline fumes might be inferred as well as one from natural gas. The inference of natural gas is greatly Aveakened by the testimony of Mr. Yogel concerning the sound condition of the pipes and meter. In any event, the presence of natural gas could only be inferred from the fact of the explosion, and its presence in the cellar has not been proven by direct evidence.
 

 Again, if the jury might, under proper instructions, have inferred that natural gas Avas the cause
 
 *432
 
 of the explosion, there is certainly no direct evidence in this record that the presence of natural gas in the cellar was due to any want of care on the part of the gas company. Before the gas company could be held, therefore, it would have to be inferred that the presence of gas in the cellar was due to such neglect. This would clearly be basing an inference upon an inference and not compelling a deduction from a proven fact. It is well settled that actionable negligence may not be predicated upon an inference drawn from another inference, but, on the contrary, if negligence is only supported by an inference, such inference must be supported by some fact established by direct evidence. This is the declaration of this court in
 
 Sobolovitz
 
 v.
 
 Lubric Oil Co.,
 
 107 Ohio St., 204, 140 N. E., 634.
 

 It does not clearly appear in this record whether the Court of Appeals reversed the judgment of the court of common pleas on the theory that there was some evidence tending to establish negligence, either directly or inferentially, or on the ground that this record presented such exceptional facts as would give application to the doctrine of
 
 res ipsa loquitur.
 
 Having disposed of the former proposition, it only remains to determine whether this record is such as to give application to the latter doctrine.
 

 In order to give rise to the application of the doctrine of
 
 res ipsa loquitur,
 
 the circumstances must be such that, in the usual course of the relations between the parties, and of the particular business transactions between them when conducted in a prudent manner, the accident would not have
 
 *433
 
 happened, and it must further appear that the cause and the means of explaining it are within the more immediate control of the defendant. In those cases where it is claimed that a presumption of negligence arises from injuries due to a defective appliance or instrumentality, it must appear that such instrumentality is under the management or control of the defendant or his agents and servants. The rule of
 
 res ipsa loquitur
 
 has been stated as follows:
 

 “All that the rule of
 
 res ipsa loquitur
 
 means is that the circumstances involved in or connected with an accident may be of such unusual character as to justify, in the absence of any other evidence bearing upon the subject, the inference that the accident was due to the negligence of the one having the possession or control of the article or thing which caused the injury, because in the absence of explanation, this is the only fair and reasonable conclusion.”
 

 It is not a substantive rule of law, and never under any circumstances may it become the ground of a directed verdict. It is a rule of evidence which permits or requires the inference of negligence where an accident occurs under circumstances where, in the ordinary course of events, such accidents do not occur. It is at best an evidential inference not binding upon a jury, but to be considered by it under proper instructions. The weight of the inference as well as the weight of the explanation is for the determination of the jury. With this brief declaration of principles governing the doctrine, let us apply them to the facts as shown in the record of the instant case.
 
 *434
 
 The cellar where the explosion occurred was under the exclusive dominion and control of the decedent, subject to the right of the gas company to make visits to read the meter, and to inspect, and, if necessary, repair the meter. It would be the duty of the person who reads the meter to either repair or report a defective condition of either meter or pipes which might come to his notice on the occasion of his visits for either reading or inspection. The gas company was not an insurer of the safety of the pipes or the meter under any and all circumstances, but was only obliged to exercise due care to install standard and suitable pipes and appliances, and to renew them when the same might be old enough to become unsafe. Any other rule would require the premises wherever gas is consumed to be inspected every day and every hour of the day. Neither the premises nor the appliances and instrumentalities were under the exclusive control of the gas company, and, without some showing of knowledge of a defective condition, or of facts reasonably calculated to put the gas company upon inquiry, the exercise of due care does not require frequent inspections of premises where natural gas is consumed. Escaping natural gas is a condition which can be as readily detected by the consumer as by the distributing company.
 

 We have examined this record carefully and critically, without success, in order that any fact or feature of this record which might make a showing of direct or circumstantial evidence from which an inference could be drawn of the want of due care on the part of the gas company might be found.
 

 
 *435
 
 We are therefore driven to the conclusion that the judgment of the Court of Appeals must be reversed, and that of the court of common pleas affirmed.
 

 Judgment reversed.
 

 Jones, Matthias, Day, Allen, Kinkade and Robinson, JJ., concur.