Day, J.
 

 This case was argued and submitted at the last term of this court, but, several briefs having been filed
 
 amici curiae,
 
 the case was set down for rehearing and was reargued at the present term.
 

 The plaintiff in error is the Northwestern Ohio Natural Gas Company, a corporation, which, for a number of years prior to February 5, 1927, was engaged in the business of furnishing natural gas for fuel and illuminating purposes to individuals, firms and corporations in the city of Toledo, Ohio. Plaintiff in error will be hereinafter referred to as the “gas company.” Among the customers of the gas company on said date was defendant in error, the First Congregational Church of Toledo, Ohio, hereinafter referred to as the “church.” Joined as defendants in error with the church are twenty-six insurance com-
 
 *144
 
 parties whose interests in the case, with the exception of amount, are identical, and who will be referred to in this opinion collectively as the “insurance companies. ’
 
 ’
 

 The first question for determination relates to the matter of whether the judgment rendered in favor of the church and the insurance companies was proper.
 

 The insurance companies joined with the church as parties plaintiff in the case, claiming to have carried certain fire insurance policies on the church property, and asserting the payment of $124,948.71 on the loss sustained by the church.
 

 The insurance policies were not introduced in evidence. The only evidence given by a witness of payment consisted in the statement by a Mr. Charles A. Langdon that the insurance companies had paid a large amount to the church. No exact figure was specified. Instead, the following stipulation was made by and between counsel for the church and for the insurance companies:
 

 “It is stipulated between the plaintiff, First Congregational Church, and the plaintiff, Insurance Companies in this case, that on February 5th, 1927, the plaintiff Insurance Companies carried insurance policies on the First Congregational Church buildings, and personal property therein in the amount and coverage as set forth in the petition, and that after the explosion and fire referred to in the amended petition, and before the commencement of this action, said insurance companies made payments to the First Congregational Church in the amount and on account of the damage by fire to the said First Congregational Church buildings, and personal property therein set forth in the amended petition.”
 

 The gas company now contends that since it did not admit the truth of the allegations of the petition in respect to insurance coverage and payments by the
 
 *145
 
 insurance companies, and since it did not join in the foregoing stipulation, it was necessary that strict proof be offered as against it to establish the truth of these allegations.
 

 Now the purpose and effect of joining the insurance companies in a proceeding of this nature has been clearly stated by this court in the case of the
 
 Lake Erie & Western Rd. Co.
 
 v.
 
 Falk and Phoenix Ins. Co.,
 
 62 Ohio St., 297, 56 N. E., 1020. The fourth paragraph of the syllabus held:
 

 “In an action brought by the owner against the railroad company to enforce such liability an insurer, having before the termination of the action, made payment to the owner on account of such loss, should intervene for the purpose of being subrogated to the rights of the owner to the extent of such payment, and the amount recovered from the railroad company should be adjudged to the owner and the insurer according to their respective interests.”
 

 In the course of the opinion, on pages 306 and 307, it is said:
 

 “It is true that the insurance company did not allege either that Falk had assigned the policy to it, or that by the terms of the policy it had reserved the right, upon payment, to be subrogated to the right of action of the insured against the company. Neither averment is required by reason or authority. The right of subrogation arises out of the relation of the parties to the subject of the action.
 
 Liverpool & Great Western Steam Co.
 
 v.
 
 Phenix Insurance Co.,
 
 129 U. S., 397 [9 S. Ct., 469, 32 L. Ed., 788].
 

 “Notwithstanding the prayer of the railroad company that the insurance company should be brought into the action, it is now contended that it should not have been permitted to intervene and to assert its right of subrogation in the action brought by the owner against the railroad company. But the subject of the
 
 *146
 
 action was the loss sustained in consequence of the destruction of the property. The object of the suit was to recover the value of the property from the party ultimately liable, and to apportion the proceeds of the judgment recovered between the injured parties according to their interests in the amount recovered. The recovery sought was for a single wrongful act and the railroad company could have objected with more force if it had been subjected to two actions by those interested in the recovery. This mode of asserting the rights of parties in the subject of a single cause of action, all being brought into the same suit and each asserting his own interest, is in conformity with the requirements of modern procedure.
 
 Swarthout et al.
 
 v.
 
 Chicago & Northwestern Ry. Co.,
 
 49 Wis., 625 [6 N. W., 314];
 
 [Peoria Marine & Fire] Insurance Co.
 
 v.
 
 Frost,
 
 37 Ill., 333.”
 

 Discussing the same proposition, this court also said, in
 
 Clark, Exr.,
 
 v.
 
 McClain Fire Brick Co.,
 
 100 Ohio St., 110, at page 118, 125 N. E., 877: “While in the above case the insurance company was nominally a defendant, yet it was to all intents and purposes a co-plaintiff, and the verdict was for the full value of the property, upon which verdict the court rendered judgment and apportioned the same between the owner and the insurance company.”
 

 Also, on pages 119 and 120 of the opinion, it is said: “If the plaintiffs in this action are able to maintain the allegations of their amended petition by the evidence, they are entitled to a verdict and judgment for the full amount of the injury caused to this property by the wrongful acts of the defendant, and the court will apportion this judgment as was done in the case of
 
 [Lake Erie & Western] Railroad Co.
 
 v.
 
 Falk et al., supra,
 
 by awarding to the executor such part thereof as may be necessary to pay the debts of the estate, and the residue to the owners.
 
 School Districts
 
 v.
 
 *147
 

 Edwards et al.,
 
 46 Wis., 150 [49 N. W., 968], and
 
 Seymour et al.
 
 v.
 
 Carpenter et al.,
 
 51 Wis., 413, [8 N. W., 251.]”
 

 The right of recovery in this case as to all parties plaintiff depended upon the establishment of the claims of negligence. In this connection the rights of the insurance companies were in no wise superior to the rights of the church. Primarily, the purpose of their joinder in the ease was to assert as against the church a right to a portion of any recovery had in favor of the church against the gas company.
 

 The stipulation offered had nothing to do with the maintenance of the charges of negligence. Direct testimony in support of these allegations, in the form of the insurance policies themselves, and evidences of payment thereunder, would have been equally inappropriate for such purpose. The object of the stipulation was to supply the court with information to enable it to adjust the rights of the church and the insurance companies in any recovery had against the gas company. With the matter of the division of any recovery had against it, the gas company had no concern ; and it is well settled that the bare fact of payment by the insurer on a loss sustained cannot and does not affect the assertion of a claim against a wrongdoer who has destroyed or injured property covered by insurance.
 
 Mobile & Montgomery Ry. Co.
 
 v.
 
 Jurey,
 
 111 U. S., 584, 4 S. Ct., 566, 28 L. Ed., 527;
 
 Cushman & Rankin Co.
 
 v.
 
 Boston & Maine Rd. Co.,
 
 82 Vt., 390, 73 A., 1073, 18 Ann. Cas., 708;
 
 Long
 
 v.
 
 Kansas City, Memphis & Birmingham Rd. Co.,
 
 170 Ala., 635, 54 So., 62;
 
 Farmers Mercantile Co.
 
 v.
 
 Seaboard Air Line Ry.,
 
 102 S. C., 348, 86 S. E., 678.
 

 While technically by the general denial in its answer the gas company controverted all allegations in the petition, including the ones pertaining to insurance,
 
 *148
 
 such denials were immaterial because in fact it had no interest in the matter of insurance.
 

 A different result might obtain in a case where a suit was being prosecuted by an insurer without any participation by the insured. The procedure adopted in the instant case, however, serves to fully protect the gas1 company, and it is difficult to see how it would be prejudiced thereby.
 

 The absence of anything detrimental to the gas company is further emphasized by the admission of its counsel, in argument to the jury, that the insurance companies did carry $500,000 on the church property and had paid to the church the sum of $124,948.71 on the loss sustained. The fact that it does not appear that the gas company was prejudiced by this procedure, coupled with the further fact that this suit does not involve an attempt to set up a complete subrogation claim, independently of the insured, serves to distinguish the following cases:
 
 Bartges
 
 v.
 
 O’Neil,
 
 13 Ohio St., 72, and
 
 Zuellig
 
 v.
 
 Hemerlie,
 
 60 Ohio St., 27, 53 N. E., 447, 71 Am. St. Rep., 707. Consequently, it is our view that there was no error in the mode of asserting the various interests claimed by the church and the insurance companies in the single cause of action against the gas company.
 

 The next assignment of error to be considered is the claim by the gas company that the measure of damages adopted in the trial of the case was incorrect and the testimony offered in support thereof was improperly admitted. The record shows that two witnesses testified directly on the subject of damages, Charles A. Langdon, an architect by profession and a member of the church, who exercised some supervision over the church property and was familiar with it, and A. Gr. Spieker, a contractor who had examined the plans and specifications of the building. Each stated that in his opinion the walls of the smaller
 
 *149
 
 building were irreparably damaged and the superstructure of this building was totally destroyed; that the value of its foundations was approximately $9,000 or less. They gave their opinions as to the cost of replacing the building and personal property at construction costs as of the date of the fire. The same witnesses also gave their opinions on the value of the salvaged personal property. They likewise testified concerning the cost of repairing the other structure. As bearing upon the market value of the structure destroyed, Langdon stated that he did not know of the sale of any similar buildings in the neighborhood at about the time of the fire, and that both buildings had been maintained in good condition. The witness Langdon testified:
 

 “There is a depreciation from, on certain types of building, there is also a matter of obsolescence, you have got to start in, this building was not obsolete, and the building was kept up very well, and was in good condition, was in a condition that would have answered us for a good many years to come, it was a well-built building when it was built.”
 

 It is to be observed that the gas company offered no testimony whatsoever on the subject of value.
 

 The trial court’s instruction on this phase of the case is as follows:
 

 “If your verdict be for the plaintiff you will award them such an amount as damages, not exceeding the amount prayed for in their petition, as will fairly compensate them for the injuries sustained as a proximate result of the negligence of the defendant. The measure of damages is compensation. It is the object of damages to make a plaintiff whole. So far as the building at 2313-17 Collingwood Avenue is concerned, the measure of damages is the difference between the fair and reasonable value of said building, immediately before said explosion, and its fair and reasonable value
 
 *150
 
 immediately after said explosion. So far as damages to the furniture and equipment contained in said building is concerned, the same rule should be followed, that is, the difference between the fair and reasonable value of said personal property immediately before the explosion and its fair and reasonable value immediately thereafter. Insofar as damages to the building located at 2301-11 Collingwood Avenue is concerned, the measure of damages is the reasonable cost of making the necessary repairs- to- said building.”
 

 It is difficult to state a rule for measuring damages equally applicable in all cases involving either the total or partial destruction of a building by a fire negligently caused. As urged by counsel for plaintiff in error on oral argument at rehearing, fundamentally it is the purpose of the law to afford to the person damaged
 
 compensation for the loss sustained.
 
 In a case involving the destruction of a building by fire negligently caused, where restoration is impracticable, the measure of damages is the difference between the reasonable value immediately before the damage and the reasonable value immediately afterwards.
 

 In applying the foregoing rule it is proper to take into consideration the cost of reconstruction, since that is clearly an element in determining the value of the building destroyed, depreciation and obsolescence on the property, original building cost, marketability of the building damaged, and the use to which it was being put by the person damaged.
 

 In cases in which restoration of the building damaged can be made, the measure of damages is the reasonable cost of restoration or repairs.
 

 In the case of
 
 Kennedy
 
 v.
 
 Treleaven, Recr.,
 
 103 Kan., 651, 175 P., 977, the court dealt with the subject of damages- to buildings having no market value, and laid down the following rule in the second paragraph of the syllabus:
 

 
 *151
 
 “To arrive at the damages sustained, where the building burned had no market value, resort may be had to any facts which fairly tend to show its actual value when it was destroyed, and a permissible method of proof is by showing the cost of replacing the building, less any depreciation from age, use, utility, or condition.”
 

 The same case is reported in 7 A. L. R., 274, and in a lengthy note appended to the report of the ease it is stated that the majority rule permits consideration of reconstruction costs in measuring damages in cases of this character. See, also,
 
 States Corporation
 
 v.
 
 Shull,
 
 216 Ky., 57, 287 S. W., 210;
 
 Missouri Pac. Rd. Co.
 
 v.
 
 Wood,
 
 165 Ark., 240, 263 S.
 
 W.,
 
 964;
 
 City of Globe
 
 v.
 
 Rabogliatti,
 
 24 Ariz., 392, 210 P., 685.
 

 In the instant case all of the testimony tended to indicate that the property damaged had no market value, as that term is ordinarily understood. Manifestly, to apply such a test exclusively in this case would not have resulted in giving the church fair compensation for its loss. It is to be observed that the gas company was given wide latitude in cross-examination of the witnesses who testified on the subjects of value and damages. The opinions of these witnesses on the subjects of depreciation, obsolescence and original construction costs were fully developed in this way. In determining the value of the structure which was destroyed, it is not to be presumed that the jury did not consider testimony elicited from the witnesses on cross-examination relating to the various subjects upon which inquiry was made. This is especially true in view of the admonition of the court, contained in the charge, that the damages to the plaintiffs should be such as would “
 
 fairly compensate
 
 them for the injuries sustained.”
 

 The fact that one witness testifying to values made no deduction for obsolescence does not render his tes
 
 *152
 
 timony incompetent — such fact going to its weight, which was for the jury to determine. While it may he argued that a church building has no market value as such, yet it cannot be questioned that such a building has a value; and where a building has had care and upkeep, even though erected more than twenty-three years, its obsolescence may be little, if any, where it appears that the building “was in good condition, was in a condition that would have answered us for a good many years to come, it was a well-built building when it was built.” At any rate, the question was for the jury, in the light of all the circumstances and the evidence that was before it.
 

 The court in the charge employed the test of difference between the value of the premises destroyed immediately before the explosion and afterwards. The term “value” as employed by the court, in the light of all the testimony appearing in the record, could very well have been understood and applied by the jury in this case in a way which comprehended all the proper elements of damage, in view of the fact that the verdict was for less than the amount prayed for in the petition.
 

 Criticism is made of the court’s charge in that it omitted any instruction to the jury as to- what elements should be considered by it in determining the value of the building destroyed. However, counsel for the gas company did nothing more than take a general exception to the court’s charge. No request was made to the trial court to amplify the charge on the matter of damages in any way.
 

 It has been held by this court in numerous instances that it is the duty of counsel to direct the trial court’s attention to omissions in his charge; and having failed to do so in this case, no question is raised, excepting as to errors in the charge given.
 
 Columbus Ry. Co.
 
 v.
 
 Ritter,
 
 67 Ohio St., 53, 65 N. E., 613,
 
 State
 
 v.
 
 McCoy,
 
 
 *153
 
 88 Ohio St., 447, 103 N. E., 136;
 
 State
 
 v.
 
 Driscoll,
 
 106 Ohio St., 33, 138 N. E., 376;
 
 Beeler
 
 v.
 
 Ponting,
 
 116 Ohio St., 432, 156 N. E., 599;
 
 Warden
 
 v.
 
 Pennsylvania Rd. Co.,
 
 123 Ohio St., 304, 175 N. E., 207; 14 Ruling Case Law, 795, 796, 797. It is our view that no prejudicial error intervened in this connection in the trial of this case.
 

 It is necessary for the court next to determine whether there was any evidence in the record to show any negligence on the part of the gas company under the particular circumstances of this case, or evidence from which negligence might he inferred, justifying submission of the case to the jury.
 

 It is plain that the gas company was not an insurer against any and all damage which might result to a customer from the use of gas on the customer’s premises. The bare fact of explosion and resulting fire would not suffice to establish a dereliction of duty on the part of the gas company. Pacts and circumstances must be shown which indicate a want of ordinary care on the part of the gas company, proximately causing the injury, or evidence of facts from which such want of due care might be inferred.
 

 To illustrate the rulings of the courts in submitting to the jury the question of negligence by gas companies, involving damages to buildings from gas explosions, fire, etc., the following cases, in which the evidence has been held sufficient to go to the jury, may be cited:
 

 United Oil Co.
 
 v.
 
 Miller,
 
 19 Colo. App., 46, 73 P., 627 (explosion caused from an unplugged service pipe);
 
 Lanigan v. New York Gaslight Co.,
 
 71 N. Y., 29 (neglect effectually to cap and close a service pipe);
 
 Chisholm
 
 v.
 
 Atlanta Gas-Light Co.,
 
 57 Ga., 28 (cutting off the gas at meter cock in plaintiff’s cellar, instead of at the service cock under the curbstone);
 
 Shirley
 
 v.
 
 Consumers’ Gas Co.,
 
 215 Pa., 399, 64 A., 541 (frac
 
 *154
 
 tured edges of gas pipe, showing indications of an old fracture);
 
 United Oil Co.
 
 v.
 
 Roseberry,
 
 30 Colo., 177, 69 P., 588 (employee not turning off gas when he started in search for the leak);
 
 Olive Stove Works
 
 v.
 
 Fort Pitt Gas Co.,
 
 210 Pa., 141, 59 A., 819 (gas escaped through the intervening ground under the cement pavement in the plaintiff’s building);
 
 German-American Ins. Co.
 
 v.
 
 Standard Gaslight Co.,
 
 67 App. Div., 539, 73 N. Y. S., 973 (gas from leak in pipe lighted and ignited cotton flannel, causing damage complained of);
 
 Haas
 
 v.
 
 St. Paul Gaslight Co.,
 
 113 Minn., 379, 129 N. W., 759 (failure to shut off gas after taking out meter) ;
 
 Schermerhorn
 
 v.
 
 Metropolitan Gaslight Co.,
 
 5 Daly (N. Y.), 144 (break in service pipe);
 
 Heh
 
 v.
 
 Consolidated Gas Co.,
 
 201 Pa., 443, 50 A., 994, 88 Am. St. Rep., 819 (break in street main);
 
 Hartman
 
 v.
 
 Citizens Natural Gas Co.,
 
 210 Pa., 19, 59 A., 315 (leak in service pipe);
 
 O’Donovan
 
 v.
 
 Philadelphia Co.,
 
 223 Pa., 234, 72 A., 527 (leak at connection of service pipe with main);
 
 Werner
 
 v.
 
 Ashland Lighting Co.,
 
 84 Wis., 652, 54 N. W., 996 (escape from street mains; evidence not set out);
 
 Krom
 
 v.
 
 Antigo Gas Co.,
 
 154 Wis., 528, 140 N. W., 41, 143 N. W., 163 (explosion due to negligence in failing to provide stopcock in street).
 

 The foregoing cases are set forth in an annotation in 25 A. L. R., 300, 301. Other cases might be cited in which the opposite conclusion has been reached, but the foregoing citations are given to show the wide range of circumstances under which the question of negligence involving gas explosions has been submitted to the jury.
 

 In this state we have defined the duty devolving upon a gas company in connection with its product with some particularity in two comparatively recent cases. In
 
 St. Marys Gas Co.
 
 v.
 
 Brodbeck, Admr.,
 
 114 Ohio St., 423, 151 N. E., 323, it is held in the second paragraph of the syllabus: “Any evidence tending
 
 *155
 
 to establish allegations of want of due care, or from which any reasonable inference of such want of due care may be drawn, should be submitted to the jury under proper instructions.” Substantially the same rule was announced in
 
 Armour & Co.
 
 v.
 
 Ott, Admx.,
 
 117 Ohio St., 252, 158 N. E., 189.
 

 In
 
 Hartman
 
 v.
 
 Citizens Natural Gas Co.,
 
 210 Pa., 19, 59 A., 315, in the second paragraph of the syllabus, it is held: “Natural gas companies are held to a degree of eare which is commensurate with the dangerous character of the agency which is handled. The meas-use of care is not that of an insurer to every one who sustains loss by reason of gas escaping and exploding, but it is liable for an explosion where it knew, or by the exercise of ordinary care should have known, of the defect in its pipes or mains.”
 

 It is apparent from these cases that the gravamen of a charge of negligence against a gas company in a case of this character consists of a failure on the part of the company to exercise ordinary care after having actual knowledge of defects in its transportation system, or notice of facts and circumstances which are the legal equivalent of such knowledge.
 

 In the amended petition filed in this case the church and the insurance companies charged that the gas company knew, or in the exercise of ordinary care should have known, of the defects in the service line. What proof was offered to substantiate this claim?
 

 The main line of the gas company was laid in Collingwood avenue. To it was connected a service line which extended to the basement of the smaller of the two buildings on the church property, such service line being located under the lawn and front steps. The record is silent as to the ownership of this service line, although an unsuccessful attempt was made in the lower court by the church and insurance companies to establish ownership in the gas company through the
 
 *156
 
 witness Geigle. However, it is undisputed that for approximately twenty-two or twenty-three years the gas company had made continuous and exclusive use of this service line in the delivery of gas to the church property. Statements by witnesses stand uncontradicted to the effect that pipe of the type of which the service line was constructed will deteriorate in a period of not more than fifteen years, depending upon the nature of the soil or substance in which it is laid; in this case the pipe being imbedded in cinders and clay. There is- nothing in the record to show that the gas company ever inspected, tested or examined this service line at any time during the period of use.
 

 The record discloses that a short time prior to the explosion on February 5,1927, a period variously estimated by witnesses from a few days to three weeks, the odor of natural gas was noticed in the basement of the smaller church building. This' matter was brought to the attention of Charles A. Langdon, who in turn communicated with the plumbing firm of Shelling &j Forrest and asked them to investigate the matter. Mr. Forrest of that firm went to the church and examined the fixtures and detected a leak in the natural gas meter. He testified, “* * * I found that by closing all the seam up all around that on the top I could light the gas, it leaked out there a little bit, just on the top of the meter, which I blew it out.” The following also appears in his testimony, omitting the objections, the rulings of the court, the colloquy of counsel, the repetitions, and giving only such of the testimony as was admitted:
 

 “Q. What did you, yourself, do then with respect to getting a report or information to the Gas Company that there was a leak in the basement of gas? A. Nothing.
 

 “Q. I will ask you whether or not you directed any person to make a report? A. I did.
 

 
 *157
 
 “Q. To whom did you give that direction? A. To the janitress of the building.
 

 “Q. Do you know, of your own knowledge, whether or not she made, the janitress made a report to the Gas Company? A. I do.
 

 ‘ ‘ Q. I ask you whether or not she did make such report, if you know? A. She must have made a report because—
 

 “Q. No, wait a minute, what you know now, Mr. Forrest, don’t guess, don’t presume. A. I went back the next day to see if they had taken care of
 
 it,
 
 and the meter had been changed.”
 

 "What report Kate Willis, the janitress, made, the record does not disclose, as she was killed in the explosion, and the gas company offered no evidence on that point.
 

 It is argued that when the witness Forrest testified that when he “went back the next day to see if they had taken care of
 
 it,
 
 and the meter had been changed,” the word
 
 “it”
 
 refers to the meter alone, while the defendant in error claims that the word
 
 “it”
 
 refers to a former question in Forrest’s testimony, relating to “getting a report or information to the Gas Company that there was a leak in the basement of gas.” The answer may be ambiguous and open to two constructions. We are not prepared to say but that the jury may have inferred that the witness had in mind the leak of gas in the basement, especially in the absence of any testimony or evidence offered on the part of the gas company on that point, when it alone was in position to furnish such evidence.
 

 The record further shows that George M. Beckett, an inspector and meter setter for the gas company, came to the church. He testified that it was on instructions from some person in the office of the gas company that he went to the church. He came equipped with a complete kit, which included a testing outfit appropriate for testing the service line. After changing.
 
 *158
 
 the meter he did test the gas line inside the church, hut did not bother to examine the service line. He testified:
 

 “Q. What, if any, inspection did you make to see if there was any gas. leaking either from the service line, or from the house line? A. In the house line, when we changed the meter we watched the five foot hand to make sure that line is tight.”
 

 “Q. That is the only test you made of the house? A. That is the only test I made.”
 

 “Q. What, if any, did you make of the service line, of the inlet line? A. I made none.”
 

 Beckett further testified, in response to the question, “He said he was a meter setter, called a meter setter; then I asked him if he had at that time men who were called inspectors.” “A. Well, we were practically all that, you might say, inspectors, too, because we had to inspect besides do our regular work.”
 

 “ Q. I see, so these same men who set the meters also made the inspections? A. Yes, sir.”
 

 Had Beckett followed his inspection to a conclusion and used the tools of his trade that he had with him, his pump, gage, etc., for an inspection of the service pipe, he would doubtless have discovered quickly and without question that the service pipe was the source from which the gas had been escaping into the basement. He tested inside the house for all sources of leakage, and omitted to test the obvious and dangerous source, to-wit, the service pipe through which the gas was conveyed from the main into the church and house pipes. This failure to look for the source of the leak, which by the testing of the service pipe might readily have been found, might well have been considered by the jury as the negligence which caused the explosion and the fire.
 

 The explosion occurred about seven o’clock in the morning, following a heavy sleet storm, which had the effect of sealing the surface of the ground. The opin
 
 *159
 
 ion was expressed by witnesses that because of the presence of the coating of ice over the surface of the ground, natural gas escaped from the service line and followed it, gaining entrance into the basement of the church under the steps at a point where the masonry had been loosened. Several days after the explosion and resulting fire, a test was made on the service line and it was discovered that this line would not hold any pressure. Thereupon the service line was dug up, and a portion thereof was introduced in evidence. This portion was taken from the part of the service line close to the outer wall of the church building, and showed that it was badly corroded, rusted and full of holes. It was shown that the gas company had knowledge of the length of time the service pipe had been in the ground.
 

 From the foregoing facts and circumstances, could it be said, as a matter of law, that the conclusion of the jury was not supported by any evidence in finding that the gas company was guilty of negligence; or, to phrase the query a different way, can it be said, as a matter of law, that reasonable minds might not reach different conclusions, that from the foregoing facts the gas company should have known of the now apparent defects in the service line, or in the exercise of ordinary care should have tested the service line at the time its representative (Beckett) came upon the church property a few days prior to the explosion, he being not only a meter setter but an inspector, with proper tools for the purpose of inspection with him?
 

 Upon the question of notice, we are of opinion that it would not be unreasonable for the jury to have inferred from the testimony that the gas company was advised, or by the exercise of ordinary care ought to have known, of the presence of gas in the basement, for the next day after Forrest discovered the leak in the meter a new meter was installed by the gas company’s meter setter and inspector, Beckett, who in
 
 *160
 
 spected the house line and stopped there, when he might have gone further.
 

 Even though the attention of the gas company was directed to one possible source of the gas, it could not as a matter of law rely entirely upon such a suggestion from the customer, especially when Beckett, its employee, did not in fact regard the leaking meter as the only source of gas in the building, as is evidenced by his testing of the other lines in the church building after the new meter had been set.
 

 Our conclusion in this respect is further influenced by the unquestioned defects in the service line and by the fact that the service line had been used by the gas company for twenty-two or twenty-three years without any inspection.
 

 It is our conclusion, therefore, that the verdict of the jury was not unwarranted and is not a conclusion which reasonable minds might not have reached under the facts and circumstances of this case, having in mind that the product marketed by the gas company is one which possesses inherently dangerous properties. Text-writers and courts in other jurisdictions have adopted substantially the same rule in other cases. 3 Thornton on Oil and Gas (5th Ed.), Section 1080;
 
 Hunt
 
 v.
 
 Lowell Gas Light Co.,
 
 83 Mass. (1 Allen), 343;
 
 Consolidated Gas Co.
 
 v.
 
 Crocker,
 
 82 Md., 113, 33 A., 423, 31 L. R. A., 785;
 
 Swayzee
 
 v.
 
 City of Augusta,
 
 113 Kan., 658, 216 P., 265, 25 A. L. R., 262;
 
 Reid
 
 v.
 
 Westchester Lighting Co.,
 
 236 N. Y., 322, 140 N. E., 712, 29 A. L. R., 1250.
 

 Nor do we regard it necessary that the gas company be shown to be the owner of the service line. The record is silent as to the actual ownership of the line. It is clear, however, that the gas company had used the line uninterruptedly and without inspection for a period of twenty-two or twenty-three years. The essence of the claim of negligence is that the gas company might have discovered the defects in the line be~
 
 *161
 
 ing used by it if ordinary care bad been exercised. This is the rule adopted in
 
 Groff
 
 v.
 
 Chariest on-Dunbar Natural Gas Co.,
 
 110 W. Va., 54, 156 S. E., 881, in which the syllabus reads as follows:
 

 “When a gas company has the exclusive use of a pipe line not its own to' conduct gas to a consumer, the company assumes the duty of reasonable inspection and maintenance of the line while it is so used.”
 

 See, also,
 
 Washington Gaslight Co.
 
 v.
 
 District of Columbia,
 
 161 U. S., 316, 323, 325, 16 S. Ct., 564, 40 L. Ed., 712;
 
 Memphis Consol. Gas & Electric Co.
 
 v.
 
 Creighton
 
 (C. C. A.), 183 E., 552;
 
 Nonnamaker
 
 v.
 
 Kay County Gas Co.,
 
 123 Okl., 274, 253 P., 296.
 

 It is claimed that this case involves the application of the rule frequently enunciated by this court, which forbids basing an inference upon an inference.
 
 Sobolovitz
 
 v.
 
 Lubric Oil Co.,
 
 107 Ohio St., 204, 140 N. E., 634;
 
 St. Marys Gas Co.
 
 v.
 
 Brodbeck, Admr.,
 
 114 Ohio St., 423, 151 N. E., 323.
 

 We have examined the record in this case and it does not appear that it was necessary to base an inference upon an inference to establish any of the facts essential to the submission of the case to the jury.
 

 The gas company assigns as error the court’s charge on the subject of independent contractors, it being urged that the plumbers who were summoned to the church for the purpose of inspecting the premises after the odor of gas was first noticed were not independent contractors, but agents of the church; that the conduct of the plumbers was negligent as a matter of law and was a proximate cause of the damage sustained.
 

 The portion of the charge of the trial court dealing with this subject, while not free from criticism, was not prejudicially erroneous when taken in the light of the evidence and the issues in the case. The court’s charge on this phase of the case is criticised in that he failed to state, as a matter of law, for the benefit of
 
 *162
 
 the jury, whether the plumbers who inspected the premises at the request of Charles A. Langdon bore the relationship of agents or of independent contractors to the church. Of course, if as a matter of law they were independent contractors, no prejudicial error intervened, because the church would not be answerable for any acts of negligence of the plumbers as independent contractors.
 

 From an examination of the record of the case, in the light of the earlier holdings by this court in defining the term “independent contractor,” it appears that Shelling & Forrest, the plumbers, were independent contractors in this case. They had no fixed term of employment; no control was reserved by the church over the manner of performing the service; there was no obligation that they perform the service at any particular time, the method to be employed in doing the work, as far as appears from the testimony, being left entirely to their determination.
 

 It is our conclusion, therefore, that under the rule laid down in
 
 Schickling, an Infant,
 
 v.
 
 Post Publishing Co.,
 
 115 Ohio St., 589, 155 N. E., 143, and
 
 Ward
 
 v.
 
 Barringer,
 
 123 Ohio St., 565, 176 N. E., 217, the plumbing firm of Shelling
 
 &
 
 Forrest was in fact an independent contractor in this case. We call attention to the rule that where a court’s charge is open to criticism, but it does not appear that the party complaining of the error was adversely affected by the charge as given, it is not proper for a reviewing court to reverse the judgment of the trial court upon that ground.
 
 Haas
 
 v.
 
 Kundtz,
 
 94 Ohio St., 238, 113 N. E., 826;
 
 Mahoning Valley Ry. Co.
 
 v.
 
 Harnett,
 
 83 Ohio St., 480, 94 N. E., 1110.
 

 It remains to dispose of the claim of the gas company that the proximate cause of the explosion and resulting fire in the church building was the negligent act of the janitress, Kate Willis, in entering the gas-filled meter room with a lighted candle. Whether this
 
 *163
 
 was done by tbe janitress is entirely a matter of speculation. Manifestly, to establish contributory negligence on the part of a person entering a meter room with a lighted candle, it would be necessary to have evidence that the person carrying the candle had knowledge of the presence of gas fumes in the cellar, or should have detected their presence; otherwise no inference of negligence could arise. Even though some testimony had been offered on the matter of the knowledge of the janitress of the presence of gas in the meter room, the question of contributory negligence would be one for the jury, under proper instructions by the court.
 
 St. Marys Gas Co.
 
 v.
 
 Brodbeck, sufra.
 

 From an examination of the record in this case, and a consideration of the exhaustive briefs of counsel, including those filed
 
 amici curiae,
 
 we are of opinion that no prejudicial error has intervened sufficient to warrant the court in reversing the case, and for the reasons given above the judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed.
 

 Weygandt, C. J., Allen, Stephenson, Jones and Matthias, JJ., concur.
 

 Kinkade, J., not participating.