**[This opinion has been published in *Ohio Official Reports* at 79 Ohio St.3d 274.]**

WEISS, EXECUTOR, ET AL., APPELLANTS, *v.* THOMAS & THOMAS

DEVELOPMENT COMPANY ET AL., APPELLEES.

[Cite as *Weiss v. Thomas & Thomas Dev. Co.*, 1997-Ohio-153.]

*Torts—Negligence—Duty of care required by supplier of natural gas—Trial*
*court's grant of summary judgment to gas company.*

(No. 95-1992—Submitted January 21, 1997—Decided July 23, 1997.)

APPEAL from the Court of Appeals for Cuyahoga County, Nos. 67508, 67509,

67515 and 67516.

_____

{¶ 1} In 1980, John M. Brickner bought a parcel of real estate from his
employer, Thomas & Thomas.[1] A natural gas well operated by Dry Hole[2] was
located on the parcel. The governing lease agreement granted the landowner the
right to use 200,000 cubic feet of gas annually, provided the landowner installed
and maintained a gas delivery system in accordance with standards established by
Dry Hole.

{¶ 2} Brickner proceeded to build a house on his land. Although he acted
as his own general contractor, Brickner relied on the advice of Patrick Leahey, a
construction supervisor with Thomas & Thomas. Neither Leahey nor Thomas &
Thomas received any remuneration for Leahey's services. Based on Leahey's
recommendation, Brickner hired Harry Gempel, a plumber, to install a gas delivery
system from Dry Hole's well head to Brickner's home.

_____

1. "Thomas & Thomas" refers collectively to Thomas & Thomas Development Co., Thomas &
Thomas Construction Co., Thomas & Thomas Construction, and Thomas & Thomas Construction
Management, Inc.

2. "Dry Hole" refers collectively to Newbury Expansion Gas & Oil Project, Dryhole Natural
Petroleum Company, Inc., Dryhole Natural Petroleum, and Lyndall Hughes.

**{¶ 3}** The gas delivery system consisted of a gas meter, piping, a regulator to reduce pressure, and a separator to clean the gas. Gempel had never installed a private non-utility gas delivery system before and had no knowledge of the design of natural gas delivery systems. Dry Hole was not involved with the installation of the gas delivery system and never inspected the system. Nevertheless, the gas delivery system functioned without incident throughout the years Brickner owned the house.

**{¶ 4}** In 1985, Nelson Weiss bought the property from Brickner and continued using the gas delivery system much as Brickner had, to draw gas from the well head for his personal needs. It appears that in 1986, Weiss relocated portions of the system and removed the separator.

**{¶ 5}** The gas pulled from Dry Hole's well head by Brickner's, then Weiss's, gas delivery system was filled with dirt and debris, so-called "dirty gas." In the natural gas industry, dirty gas is known to cause regulators to malfunction. The dirty gas gradually eroded the interior of the regulator, eventually causing it to fail.

**{¶ 6}** Prior to its failure, the regulator reduced the pressure of the gas from 500-600 pounds per square inch at the well head to the maximum pressure the piping could withstand, 100 pounds per square inch. After the regulator failed, the excess pressure ruptured the piping. Escaping gas filled the Weiss residence and was ignited by a pilot light on March 21, 1991. The resulting explosion killed Weiss and destroyed his home.

**{¶ 7}** David Weiss, the executor of Weiss's estate ("executor"), filed a wrongful death action against Rockwell International Corporation and Equimeter, Inc., suppliers of components of the gas delivery system, Thomas & Thomas, Brickner, Gempel, and Dry Hole. State Automobile Mutual Insurance Company and State Auto Property and Casualty Insurance Company ("State Auto") filed a separate action asserting subrogation rights against the above-named defendants

and Leahey (among others). The trial court consolidated the cases and granted summary judgment for all named defendants except Brickner. The executor and State Auto voluntarily dismissed the claims against Brickner.

{¶ 8} On appeal, the executor and State Auto contended that the trial court's grants of summary judgment were improper with respect to appellees, Thomas & Thomas, Dry Hole, Leahey, and Gempel. The court of appeals held that no liability could attach to Thomas & Thomas, Leahey, and Gempel in the absence of privity between them and Weiss. The court held that as a matter of law no privity existed between Gempel and Weiss. The court held that since neither Thomas & Thomas nor Leahey had been the general contractor of the construction of Brickner's home there was no privity between either of them and Weiss. The court also held that Dry Hole owed no duty to Weiss. Thus, the court affirmed the trial court's grant of summary judgment as to each defendant.

{¶ 9} The cause is now before this court pursuant to the allowance of a discretionary appeal.

———————————

*Weisman, Goldberg & Weisman, R. Eric Kennedy* and *Henry W. Chamberlain*, for appellant, Weiss.

*Ulmer & Berne, Harold H. Reader* and *Charles R. Olsavsky*, for appellant, State Auto.

*Henry B. Bruner*, for appellee, Thomas and Thomas.

*Weston, Hurd, Fallon, Paisley & Howley*, *William H. Baughman, Jr., James L. McCrystal, Jr.* and *Scott C. Smith*, for appellee, Dry Hole.

*Davis & Young Co., L.P.A.,* and *George W. Lutjen*, for appellee, Leahey.

———————————

**PFEIFER, J.**

{¶ 10} The tragic facts of this case are not in dispute. Nelson Weiss was killed when his house exploded on March 21, 1991. The issue before us is whether

the grants of summary judgment in favor of all defendants were proper. We conclude that the grant of summary judgment in favor of Dry Hole was improper because Dry Hole owed Weiss a duty of due care. We find that the duty owed is a high one because of the dangerousness of the commodity and the industry-known hazards associated with dirty gas. We conclude that the grants of summary judgment in favor of Thomas & Thomas, Leahey, and Gempel were proper. Accordingly, we reverse in part, affirm in part, and remand the cause to the trial court.

{¶ 11} "It is a matter of common knowledge that although gas is a highly useful commodity it is also a dangerous commodity with a marked tendency to escape from its proper confines." *Suiter v. Ohio Valley Gas Co.* (1967), 10 Ohio St.2d 77, 78, 39 O.O.2d 65, 66, 225 N.E.2d 792, 793. In fact, almost since the inception of natural gas usage, this court has been called upon to adjudicate matters involving explosions caused by escaping natural gas. See *Ohio Gas-Fuel Co. v. Andrews* (1893), 50 Ohio St. 695, 35 N.E. 1059; *Cent. Ohio Natural Gas & Fuel Co. v. Capital City Dairy Co.* (1899), 60 Ohio St. 96, 53 N.E. 711; *St. Marys Gas Co. v. Brodbeck* (1926), 114 Ohio St.423, 151 N.E. 323.

{¶ 12} This court has held:

"By reason of the highly dangerous character of gas and its tendency to escape, a gas company must use a degree of care, to prevent the escape of gas from its pipes, commensurate with the danger, and if it fails to exercise this degree of care and injury results therefrom, the company is liable, provided the person suffering the injury either in person or in property is free from contributory negligence; and whether, under all the circumstances of a case, a defendant gas company has used such degree of care is a question to be submitted to the jury ***." *Northwestern Ohio Natural Gas Co. v. First Congregational Church of Toledo* (1933), 126 Ohio St. 140, 184 N.E. 512, paragraph four of the syllabus.

**{¶ 13}** The *Northwestern* opinion did not distinguish between a public gas company and a non-public gas company and we see no reason to do so at this time. The law of this state is that gas companies owe a duty of care to prevent the escape of gas, commensurate with the dangerousness of the situation. Gas companies are not liable for the escape of gas in strict liability as the court of appeals correctly noted. See *Northwestern*, 126 Ohio St. at 153, 184 N.E. at 517 (it is plain that the gas company was not an insurer against any and all damage). However, given the deadliness of natural gas and the dire consequences its escape so often engenders, due care is a very high standard indeed.

**{¶ 14}** As this court has noted, "The bare fact of explosion and resulting fire would not suffice to establish a dereliction of duty on the part of the gas company. Facts and circumstances must be shown which indicate a want of ordinary care on the part of the gas company, proximately causing the injury, or evidence of facts from which such want of due care might be inferred." *Northwestern*, 126 Ohio St. at 153, 184 N.E. at 517-518. In reviewing the record, we find ample evidence from which to infer "want of due care." For example, Dry Hole did not inspect the gas delivery system during or after installation, Dry Hole did not warn Brickner or Weiss of the dangers associated with dirty gas, and Dry Hole did not clean its gas.

**{¶ 15}** Given the case law of this state and the facts before us, we can only conclude that Dry Hole owed a duty of due care to Weiss. We reach this conclusion without expanding the law of gas company liability beyond what it has been for years. Gas companies must exercise due care commensurate with the dangerousness of their product.

**{¶ 16}** Thus, the issue becomes, as it did in *Suiter*, one "of the degree of care imposed upon a gas company considering the facts at hand," *Suiter*, 10 Ohio St.2d at 79, 39 O.O.2d at 66, 225 N.E.2d at 794, and that is inherently a question for the finder of fact. Accordingly, we reverse the portion of the decision of the

court of appeals that affirms the grant of summary judgment in favor of defendant Dry Hole and remand the cause to the trial court for further proceedings.

{¶ 17} As to the grants of summary judgment in favor of defendants Thomas & Thomas, Leahey, and Gempel, we conclude that the court of appeals properly affirmed the decisions of the trial court. We find no error in the conclusion that there were no genuine issues as to material facts. Neither did the court of appeals err in applying the law before it. Accordingly, we affirm the portion of the decision of the court of appeals that affirms the grants of summary judgment in favor of defendants Thomas & Thomas, Leahey, and Gempel.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

RESNICK, J., concurs.

DOUGLAS and F.E. SWEENEY, JJ., concur in part and dissent in prat.

MOYER, C.J., COOK and LUNDBERG STRATTON, JJ., dissent.

_____

**DOUGLAS, J., concurring in part and dissenting in part.**

{¶ 18} I concur. I would go further than the majority, however, and reverse the summary judgment as to Gempel the plumber. Gempel undertook to install a dangerous instrumentality even though, as is admitted, he had never installed such a gas delivery system and was bereft of knowledge of the design of natural gas delivery systems. Consequently, I believe that there was joint negligence on the part of Gempel and Dry Hole.

F.E. SWEENEY, J., concurs in the foregoing opinion.

_____

**COOK, J., dissenting.**

{¶ 19} I respectfully dissent. In arriving at its conclusion that Dry Hole owed Weiss a duty of care, the majority has overlooked the exculpatory clause in

the governing lease agreement designed to cover this exact situation. Two of the appellant's four assignments of error relate directly to the validity of the exculpatory clause. Further, considering that the trial court cited the exculpatory clause as an independent basis for its grant of summary judgment in favor of Dry Hole, and the appellate court affirmed that determination, the majority's analysis of the case on appeal is incomplete.

{¶ 20} The exculpatory clause in question states:

"Lessees further agree to give to the one residence to be built on the subject property closest to the well head, gas not to exceed 200,000 cubic feet per annum, for domestic use provided the owner thereof furnishes the gas meter, the piping and installation to the well head at their expense and will continue to maintain the meter and installation in good working order to the standards acceptable to NEWBURY EXPANSION GAS & OIL PROJECT [Dry Hole]. * * * Owner further covenants and agrees that his taking and use of gas shall be wholly at his own risk, the NEWBURY EXPANSION GAS & OIL PROJECT not be held liable for any accident or damage caused thereby * * *."

{¶ 21} It is not a novel concept that courts should give effect to exculpatory clauses executed by parties with relatively equal bargaining power. As far back as 1906, this court considered a similar exculpatory clause and determined that it was enforceable. *Mansfield Mut. Ins. Co. v. Cleveland, Cincinnati, Chicago & St. Louis RR. Co.* (1906), 74 Ohio St. 30, 77 N.E. 269, paragraph one of the syllabus. To avoid the force of the exculpatory clause, however, appellant cites two reasons why Dry Hole's disclaimer of liability should not be given effect in this case.

{¶ 22} First, appellant argues that the exculpatory clause is ambiguous and therefore its terms are unenforceable. While some courts have held exculpatory clauses unenforceable for ambiguity (see *Collins v. Click Camera & Video, Inc.* [1993], 86 Ohio App.3d 826, 621 N.E.2d 1294; *Orlett v. Suburban Propane* [1989],

54 Ohio App.3d 127, 561 N.E.2d 1066), no such ambiguity is present in the exculpatory clause under consideration.

{¶ 23} Appellant argues that the contract language requiring the lessor to "maintain the meter and installation in good working order to the standards acceptable to [Dry Hole]" creates an ambiguity when read in conjunction with the disclaimer of liability. Appellant concludes that it would be unconscionable to permit Dry Hole to control installation and maintenance of the gas delivery system, while allowing it to avoid responsibility for injury caused by those acts.

{¶ 24} By its clear terms, the lease provision absolves Dry Hole of all liability related to the residence owner's taking of the gas, while giving Dry Hole the right to determine whether the residence owner has maintained the meter and installation in "good working order" as required under the provision. This allocation of rights and obligations is not inconsistent and does not create an ambiguity.

{¶ 25} Neither is this arrangement substantively or procedurally unconscionable. Contrary to the suggestion of appellant, the lease did not force the owner to relinquish control of the installation and maintenance of the gas delivery system. Instead, it simply permitted Dry Hole to set a floor for maintenance of the system, below which the owner could be required to take remedial action. Nothing in the contract would have prevented the owner from maintaining the system above any safety or efficiency floor set by Dry Hole.

{¶ 26} Moreover, it is apparent from a reading of the lease that Dry Hole received a disclaimer of liability as part of a bargained-for exchange. The lease provisions were negotiated between Weiss's predecessor in interest, Thomas & Thomas Development Company, and Dry Hole. Nothing suggests that the bargaining power of these parties was disparate.

{¶ 27} The lease allowed up to 200,000 cubic feet of gas per year for use in a dwelling built on the subject property. Dry Hole, however, contracted to avoid

8

responsibility for installation and maintenance of the gas delivery system or for any accident or damages resulting from use of the gas. This is not a situation such as that confronted by the appellate court in *Orlett v. Suburban Propane*, where the supplier of a dangerous product attempted to disclaim its liability for negligence without any attendant benefit to the purchaser. Instead, Weiss, as owner of the residence named in Dry Hole's lease, was not charged for the use of gas taken from the well head. As part of the value given for the cost-free gas, however, Weiss was required to extract the gas at his own expense and peril.

{¶ 28} Appellant also argues that the exculpatory language in the lease should be voided because Dry Hole failed to exercise "any care whatsoever toward [a]ppellant." This statement is premised on Dry Hole's recusal from involvement in the installation and maintenance of Weiss's gas delivery system. As authority for its argument, appellant cites to that portion of *Richard A. Berjian, D.O., Inc. v. Ohio Bell Tel. Co.* (1978), 54 Ohio St.2d 147, 158, 8 O.O.3d 149, 155, 375 N.E.2d 410, 416, where the court stated:

"Although a limitation-of-liability clause for damages caused by one's own negligence may be valid and enforceable, it is ineffective where the party to the contract seeking protection under the clause has failed to exercise any care whatsoever toward those to whom he owes a duty of care."

{¶ 29} A thorough reading of *Richard A. Berjian, D.O., Inc.,* and review of the authorities it cites, however, reveals that a "failure to exercise any care whatsoever," as discussed in that case, relates to willful or wanton misconduct, not a negligent failure to act. Appellant evinces no action by Dry Hole that could conceivably rise to the level of willful or wanton misconduct. Accordingly this argument too must fail.

{¶ 30} Finally, I believe it worthy of explanation why Dry Hole should not be held to the general rule that prohibits a *public utility* from limiting its liability for damages resulting from its negligence. See, *e.g.*, *N.W. Graham & Co. v. W. H.*

*Davis & Co.* (1854), 4 Ohio St. 362, 377; *Telegraph Co. v. Griswold* (1881), 37 Ohio St. 301; *Richard A. Berjian, D.O., Inc., supra*. While Dry Hole engages in a business common to several public utilities (the natural gas business), it is not a public utility and does not engage in the type of activity necessitating a prohibition against its use of exculpatory clauses.

**{¶ 31}** As stated in *Richard A. Berjian, D.O., Inc.,* at 154, 8 O.O.3d at 152-153, 375 N.E.2d at 414, the reason for the general prohibition is that public utilities are granted monopolies to provide specific services and, therefore, should not be entitled to use their premium bargaining power to "dictate unfair or oppressive terms and conditions with customers who have no choice but to accept the conditions along with service." Because Dry Hole is not a monopoly and, in fact, negotiated this lease obligating itself to provide gas to the entire development at a savings rate of fifteen percent below East Ohio Gas's residential market rate, the reasons for limiting a public utility's freedom of contract are not present here. Unlike a public utility, Dry Hole did not enjoy a status that would have prohibited Thomas & Thomas Development Company from utilizing another provider of natural gas.

**{¶ 32}** Because the appellant advances no meritorious legal argument to reverse the appellate court's affirmance of summary judgment in favor of Dry Hole on the exculpatory clause issue, I would affirm.

MOYER, C.J., and LUNDBERG STRATTON, J., concur in the foregoing dissenting opinion.

_____