HARTENSTEIN, APPELLEE, *v.* NEW YORK LIFE INSURANCE Co., APPELLANT.

414

(No. 4272—Decided August 6, 1952.)

*Messrs. Englebeck & Kaufmann,* for appellee.
*Mr. Carl D. Sheppard,* for appellant.

DOYLE, J.   Mrs. Irma L. Hartenstein, as the beneficiary of a life insurance policy issued upon the life of her husband, Alfred D. Hartenstein, sued the New York Life Insurance Company to recover double indemnity provided for in the policy for death resulting "directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means * * *; provided, however, that such double indemnity benefit shall not be payable if the insured's death resulted, directly or indirectly, from (a) self-destruction, whether sane or insane * * *."

It is alleged in the petition "that on or about the 16th day of November, 1949, and while said policy was in full force and effect, the said Alfred D. Hartenstein did die by violent, external and accidental means as the proximate result of being struck by a railroad locomotive while an occupant of an automobile." The defendant company filed its answer, and, after certain admissions, denied that the insured died "directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means" within the meaning of the policy, but that the death was caused by "self-destruction." The reply to the answer, in addition to a general denial, specifically denied "self-destruction."

At the close of the evidence and pursuant to the

charge of the court, the jury rendered its verdict for the beneficiary and against the insurance company. The case is now before this court on appeal from the judgment entered by the Court of Common Pleas of Summit County, on the verdict so rendered.

Error, claimed to be prejudicial to the defendant company, is presented in the following terms:

"(1) * * * the verdict of the jury is contrary to the manifest weight of the evidence and is contrary to law.

"(2) The court erred in its charge to the jury after the argument of this cause.

"(3) The court erred in the rejection of evidence offered by the defendant, to which rejection the defendant at the time excepted.

"(4) The court committed other errors manifest upon the face of the record."

The testimony of the several persons who were near the scene of the tragedy and witnessed the conduct and activity of the insured was for all practical purposes essentially the same on the question of how he met his death. In brief, there is testimony tending to prove that the insured drove his automobile on an improved highway to a point several hundred feet from a well-marked main line, four-track railroad crossing, and then parked for "fifteen or twenty minutes." His unusual conduct was such as to attract the attention of a nearby workman. Several automobiles at about this time came to the crossing and stopped to give way to a forty-car loaded Baltimore and Ohio freight train, which was approaching at a speed of approximately 40 miles an hour. While the warning lights were flashing, and the train's whistle was blowing, the insured drove his car away from its parked position, passed around the several automobiles ahead, which had been stopped for the train, hesitated momentarily at the boundary of the crossing, and then

proceeded slowly to the track upon which the train was approaching, where the automobile came to a stop. In a "matter of seconds" the inevitable collision occurred, and the insured was thrown from his car to the side of the tracks, while the train continued on through the crossing, carrying the automobile on the front of the engine. Death followed quickly. In addition to the warning signals, there is evidence that the train could be plainly seen in the broad light of the day by all who approached the crossing.

From these facts there arose a jury question, in view of the pleadings, whether this death resulted from accidental means or from self-destruction. The jury found, as stated above, that it resulted from accidental means.

During the trial evidence was introduced, and later rejected by the court, tending to prove a motive for suicide. It appears that the insured was, at the time of his death, the secretary of one of the lodges of a prominent international fraternal society. In his capacity as secretary, he received the income arising from the payment of dues, etc., and it was his duty to deposit it in a local bank, named by action of the lodge, as depository. Several weeks before his death, an annual audit of these funds was commenced by a designated committee of the lodge, and there was tentatively revealed that, while the secretary's books showed $23,401.76 on hand, the reconciliation with the depository bank indicated $13,607.76 in amount. While this evidence given at the time of the trial created only an inference that the insured was responsible for it, nevertheless, in view of the later history of the insured, and the circumstantial setting of the means of death, we think the testimony had probative value and was admissible.

It is argued by the appellee that "The most that can be said for the evidence * * * relative to the * * * lodge

is the claim of members * * * that the accounts * * * were, at the time of the death * * *, short. It might be inferred, and inferred only, that Alfred D. Hartenstein was responsible for the shortage. That, however, is as far as the inference could go. To infer that such a shortage was a motive for suicide would be to base an inference upon an inference, the first inference being that by reason of the claimed shortage it might be inferred that * * * (the insured) was responsible for it. To further infer that this constituted a motive for * * * self-destruction * * * is unquestionably basing an inference upon an inference, which is inadmissible in the Ohio law.''

The trial court, in rejecting the evidence, apparently adopted this reasoning. The jury was told that ''It is the law in Ohio that an issue cannot be proved by basing one inference upon another, because that proof would be too conjectural and too speculative.''

■ Under the circumstances of this case, either the insured died ''directly and independently of all other means from bodily injury effected solely through external, violent and accidental means,'' or he died from ''self-destruction.''

On the question of suicide or self-destruction, intent is indeed an element. (We presume the insured sane— there was no evidence to the contrary. We therefore treat the question as one of ''suicide.'') If a sane person loses his life as a direct result of his own conduct, without an intention to destroy himself, he has not committed suicide, even though he has been grossly negligent or guilty of wanton or willful misconduct.

Intent is a ripened purpose to effect a certain result, and, as stated, must exist in suicide. Motive is an entirely different thing. Generally speaking, motive has to do with the inducement, the reason, the cause or the incentive for the intent—that condition of mind which incites the action.

There are usually two evidential steps in the establishment of motive: (a) evidence of facts and circumstances, known to the person, which would tend to excite an emotion seeking an outlet in action; (b) the emotion or passion itself, likely to lead to a certain outlet in action—for instance, suicide.

In the textbooks may be found the illustration of the prosecution of A by B in a suit at law, which is said to have been a "motive" for A's subsequent assault and battery upon B. Here the "motive" actually was not the lawsuit, because the motive is the emotion, the state of mind. The fact of the lawsuit, however, does tend to prove the state of mind. Thus, any evidence of facts and circumstances known to an individual which tends to prove in him an emotion, which emotion may have a tendency of seeking an outlet in action by suicide, is always admissible in evidence, when the question of suicide is an issue in the case. I Wigmore on Evidence (Third Ed.), Section 117, *et seq.*; II Wigmore on Evidence (Third Ed.), Section 385, *et seq.*

In the case before us, it is of no particular consequence whether the insured was or was not a defaulter. The fact that he was called upon to account for the accuracy and honesty of his stewardship in the handling of his lodge's financial affairs, under circumstances tending to show various questionable discrepancies, is competent and relevant, as tending to prove a state of mind. There are a number of authorities (with which we do not disagree) which hold that wide latitude of inquiry as to existence of a motive to commit suicide should be permitted, to enable the insurer to overcome, if he can, the presumption against suicide (*Hrybar* v. *Metropolitan Life Ins. Co.,* 140 Ohio St., 437, 45 N. E. [2d], 114), and that the rejection of such evidence is error. *Occidental Life Ins. Co.* v. *U. S. National Bank of Denver,* 98 Colo., 126, 53 P. (2d), 1180; *Occidental Life Ins. Co.* v. *Graham,* 22 F. (2d),

528; *Prudential Ins. Co. of America* v. *Morris,* 72 F. (2d), 824.

See, also, *Blackburn* v. *State,* 23 Ohio St., 146 (defense of suicide in homicide case).

The establishment of a motive for suicide or self-destruction is not necessary. Yet if it can be found as a probable fact, it becomes an item of evidence. Motive is always relevant under such a claim, and the absence of any showing of an emotion or passion is a circumstance which may be considered against the claim.

■ Much is made of the so-called judicial slogan which is said to obtain in this state, that "An inference of fact cannot be predicated upon another inference, but must be predicated upon a fact supported by evidence." Second paragraph of syllabus in *Sobolovitz* v. *Lubric Oil Co.,* 107 Ohio St., 204, 140 N. E., 634. See, also, *St. Mary's Gas Co.* v. *Brodbeck, Admr.,* 114 Ohio St., 423, 151 N. E., 323; and *Lashure* v. *East Ohio Gas Co.,* 119 Ohio St., 9, 162 N. E., 41.

We are not gifted with the power to discern with mathematical certainty whether the Supreme Court of this state did or did not intend to pronounce an all-purpose rule. We are inclined to think that it did not, because of various of its decisions in years gone by, and because of its most recent decision in *City of Cleveland* v. *McNea,* 158 Ohio St., 138, 107 N. E. (2d), 201. It is probable that the Supreme Court meant only to say that, in passing upon the sufficiency of evidence, if one of the premises is not sufficiently proved, the entire syllogism fails. 1 Jones Commentaries on Evidence (Second Ed.), Section 365; *Ensel* v. *Lumber Ins. Co. of New York,* 88 Ohio St., 269, 102 N. E., 955.

Professor Wigmore, in his inimitable provocative style, says:

"It was once suggested that an 'inference upon an inference' will not be permitted, *i. e.,* that a fact de-

sired to be used circumstantially must itself be established by testimonial evidence; and this suggestion has been repeated by several courts, and sometimes actually enforced. There is no such orthodox rule; nor can be. If there were, hardly a single trial could be adequately prosecuted. For example, on a charge of murder, the defendant's gun is found discharged; from this we infer that he discharged it; and from this we infer that it was his bullet which struck and killed the deceased. Or, the defendant is shown to have been sharpening a knife; from this we argue that he had a design to use it upon the deceased; and from this we argue that the fatal stab was the result of this design. In these and innumerable daily instances we build up inference upon inference, and yet no court (until in very modern times) ever thought of forbidding it. All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data. The judicial utterances that sanction the fallacious and impractical limitation, originally put forward without authority, must be taken as valid only for the particular evidentiary facts therein ruled upon. * * *." I Wigmore on Evidence (Third Ed.), Section 41.

The logic of authorities adhering to the text set out in the preceding paragraph finds expression and application in a host of cases. In *Neely* v. *Provident Life & Accident Ins. Co.*, 322 Pa., 417, 185 A., 784, the learned Justice Maxey of the Supreme Court of Pennsylvania stated:

"Both in the activities of laymen and in the administration of justice there are many examples of the permissible drawing of more than one inference from a primary established fact. When jurors in their deliberations arrive by a process of reasoning at an acceptable inference of fact, they have a right to add such fact to any previous facts found by them and

proceed by ratiocination from such fact or facts to additional inferences of fact and then proceed still further by like process until they arrive at the ultimate conclusion on the issue trying.''

The famous case of *State* v. *Hauptmann,* 115 N. J. Law, 412, 180 A., 809, certiorari denied, 296 U. S., 649, 80 L. Ed., 461, 56 S. Ct., 310 (Lindbergh kidnapping and murder), is another authority in point, and is cited by the Pennsylvania court in the case noted above.

Neither time nor space permits extensive discussion of the many reasons for or against the rule or its various modifications and exceptions. Reference is made to the volumes of Jones and Wigmore heretofore cited and to the detailed annotation in 95 A. L. R., 162 *et seq.,* with especial reference to ''III. Modifications or explanations of, or exceptions to, supposed general rules''; likewise to the documentation and discussion of Ohio cases by Allen B. Diefenbach in Vol. 15 Ohio Bar Assn. Rep., 541.

In the case before us, we do not have the question of the proof of an *ultimate fact* based upon inference predicated upon another inference, as did the Supreme Court in *Sobolovitz* v. *Lubric Oil Co., supra*; *St. Marys Gas Co.* v. *Brodbeck, Admr., supra*; and *Lashure* v. *East Ohio Gas Co., supra.* We have before us only the question of the sufficiency of the evidence offered to prove an evidentiary fact (motive).

In stating and applying the rule as we understand it to be to the facts before us, we hold that an inference cannot be based upon evidence which is speculative or uncertain—evidence which raises only a conjecture or possibility. However, in the proof of an evidentiary fact, if the evidence from which the first inference (emotion) is drawn, has probative value (a shortage in the bank accounts, etc.—unusual and peculiar conduct at the railroad crossing), and the infer-

ence of an emotion is a reasonable one (which we find it to be), then the second inference may be reasonably drawn—*i. e.*, the inference that the emotion so found to exist sought an outlet in action. From this evidence, a jury could reasonably find the evidentiary fact of "motive." A ruling to the contrary on the so-called claim of "inference upon an inference" would always preclude the establishment of a state of mind—an emotion—except in those cases in which the person himself has attested to his mental state.

The judgment will be reversed, and the cause remanded for error in the court's refusal to consider the evidence offered to establish motive. The judgment entry will state that we find no other error of a prejudicial character.

*Judgment reversed.*

HUNSICKER, P. J., and STEVENS, J., concur.