STATE, PLAINTIFF-APPELLEE, *v.* CHAMBERLAIN, DEFENDANT-APPELLANT.

Ohio Appeals, Seventh District, Harrison County.

No. 293. Decided November 5, 1963.

*Mr. Edward D. Mosser,* prosecuting attorney, for plaintiff-appellee.

*Mr. Harold Stein* and *Mr. Eugene B. Fox,* for defendant-appellant.

FRANCE, J. This appeal is from judgment and sentence of defendant after jury trial in Common Pleas Court, Harrison County.

222

Defendant was charged on four counts, all relating to property of The Consolidation Coal Company. The charges were that he aided and abetted certain brothers Dinsio in:—

1. Breaking and entering a Hanna warehouse.
2. Stealing a quantity of copper wire stored therein.
3. Maliciously injuring certain of this wire.
4. Operating a Consolidation Coal Company cargo truck without the owner's consent.

He was tried and convicted on each and every court and sentence imposed.

At the trial the state offered evidence to establish that:—

Defendant knew the Dinsio brothers, including Ancil and William.

At some time after 3:45 p. m. on May 22, 1962 (the indictment claims 5:00 p. m.) the Coal Company warehouse and the enclosure surrounding it were broken into and the wire in question, together with the cargo truck, taken.

In the course of removal of the wire it was cut into shorter lengths.

That both wire and the truck were recovered the next day at different points on the Coal Company's property within three or four miles of their point of origin.

That at approximately 1:00 a. m. the following morning a coal hauling truck (not the cargo truck in question), said to be the property of one Sponholz, was observed by a deputy sheriff on routine patrol, some eight to ten miles from the site of the then undiscovered breaking and entering and travelling away from it, was pursued by him and, after a gun battle, was wrecked and abandoned by the driver.

That the Sponholz truck was driven by *Ancil* Dinsio.

That at the beginning of the pursuit the Sponholz truck was being followed by defendant driving a car owned by *William* Dinsio, Ancil's brother.

That in the Sponholz truck at the time Ancil drove it were found bolt cutters which produced the same striations on the cut ends of the stolen copper wire, and from this expert testimony was positive that the bolt cutters so found were used to cut the wire in question.

Defendant's second assignment of error, which we first consider, relates to the weight of the evidence.

The sole link between *Ancil* Dinsio and the four crimes committed at the Coal Company warehouse is the fact that the bolt cutters and Ancil Dinsio were in the Sponholz truck at one and the same time. This might permit, but certainly does not require, an inference that Ancil, rather than the truck's owner, put them there.

The sole link of defendant to the crimes is through Ancil and comes from the showing that he was in close (vehicular) proximity to Ancil at a time the bolt cutters were in the Sponholz truck. To connect defendant with any wrongdoing of Ancil *in connection with the Sponholz truck* one of two inferences is required:—

First, that the proximity was in fact the result of defendant's acting as a moving guard, lookout or interference runner in the event Ancil was followed or interfered with by the police in making off with a stolen Sponholz truck. (This inference is weakened or dispelled by the State's evidence that defendant, far from running interference, actually pulled off the highway almost at the first moment of pursuit.)

Second, alternately the jury could infer that, since Ancil came from Salem and the Sponholz truck from the vicinity of Cadiz, Ancil had been transported there in the car defendant was driving in order to procure (theft was alluded to but never clearly shown) the Sponholz truck.

To connect defendant with the Consolidation Coal Company crimes it was necessary first to conclude, as a result of inference only, that defendant somehow assisted in the procurement *by Ancil* of the Sponholz truck and *further* to conclude by inference from the presence of bolt cutters alone that *Ancil*, rather than some previous occupant of the truck, had not only placed the bolt cutters there, but had previously participated in their use on the Coal Company's premises. All this is a rather large pyramid of inferences each of which must be used in special sequence, and without aid of any other material fact, to make the connection required. The State has theorized that the Sponholz truck appears in the case because the stolen Consolidation cargo truck, used for the initial transportation of the wire, was too conspicuous to be used on the highways and that it became necessary to steal another truck (Sponholz) at a later time in order to remove the loot. Whether this is appealing

224

logic we need not decide, because it is theory only, without any new fact to support it and thus there are no independent facts to come to the aid of the inference that Ancil was at the Consolidation warehouse because the bolt cutters were with him some ten miles from the scene and at a later time.

All of this is a thin thread of circumstance, inference, deduction and conjecture out of which to weave the net that holds defendant tightly to a crime committed several hours before and miles distant. None of the circumstances shown, let alone the whole chain taken together, could be resolved on a theory consistent only with the defendant's guilt as required by law.

In addition is the problem created by double inferences. Ohio has, in civil cases, relaxed the former stiff rule that one inference cannot be built on another. See *Hurt* v. *Charles J. Rogers Transportation Co.*, 164 Ohio St., 329; *McDougall* v. *Glenn Cartage Co.*, 169 Ohio St., 522. Particularly is this true where the same set of facts may give rise to more than one inference. Thus conceivably the jury might be permitted to infer, from the same facts, that Ancil both used the bolt cutters at the scene of the crime, *and* placed them, at a later time, in the Sponholz truck. However the inference arising from defendant's presence in Williams car does not arise from these same facts but from others of no independent probative value. Thus the chain of inferences here is one answering to the description in *Hartenstein* v. *New York Life Insurance Co.*, 93 Ohio App., 413, ''an inference cannot be based upon evidence which is speculative or uncertain—evidence which raises only a conjecture or possibility.''

From the foregoing we find that the verdict was against the manifest weight of the evidence, and the second assignment of error is well made.

The first assignment of error concerns the conduct of the examination of three of state's witnesses. A study of the record indicates that the answers, or expected answers, to the questions propounded were in no respect prejudicial to the defendant, and this assignment is not well taken.

For the foregoing reasons the judgment of the court of common pleas is reversed, and the cause remanded for a new trial.

BROWN, P. J., and JONES, J., concur.