MARTIN ET AL., APPELLANTS, *v.* DESIGN CONSTRUCTION SERVICES, INC., APPELLEE.

[Cite as *Martin v. Design Constr. Servs., Inc.*, 121 Ohio St.3d 66, 2009-Ohio-1.]

(Nos. 2007–2023 and 2007–2024—Submitted September 16, 2008—Decided January 6, 2009.)

MOYER, C.J.

I

{¶ 1} The Ninth District Court of Appeals certified the following issue pursuant to Section 3(B)(4), Article IV, Ohio Constitution and App.R. 25: "[I]n an action

for temporary damages to a noncommercial real property, [is] a failure to prove the difference between the fair market value of the whole property just before the damage was done and immediately thereafter * * * fatal to the claim?"

{¶ 2} For the following reasons, we answer the question in the negative and reverse the judgment of the court of appeals.

## II

{¶ 3} This case concerns a home built by Design Construction Services, Inc., appellee. The current owners of the home, Michael' and Jennifer Martin, appellants, sued Design Construction over defects in the home stemming from faulty construction. Specifically, the Martins alleged that the walls and foundation of the attached garage required repair due to Design Construction's negligence.

{¶ 4} The home was built on a sloping lot. Accordingly, earth under the attached garage had been leveled in preparation for pouring the garage floor. While pushing fill dirt inside the garage with a bulldozer, a Design Construction employee applied too much pressure on the dirt, which, in turn, pressed against the exterior walls, causing two of the concrete-block walls to flex outward. Design Construction attempted to repair the bowed walls by excavating around the walls, straightening them, and repairing the cracks in the walls. Satisfied with these repairs, Design Construction completed the building and sold it in 1998. In 1999, Design Construction hired a company to fill the concrete blocks with grout.

{¶ 5} In the summer of 2000, the Martins bought the home. During pre-sale visits to the home, the Martins were made aware of cracks in the facing of the garage foundation walls. These cracks were noted on the property disclosure form, along with a note that a crack had been fixed in 1999. The home-inspection report, which was produced for the Martins, also noted the cracks and advised that such cracks were not unusual for the age of the house and should be monitored for widening.

{¶ 6} When the cracks began to widen in 2004, the Martins assumed that the damage was cosmetic and attempted to address it accordingly. In the process, they discovered that the blocks making up the wall were crumbling and that the grout filling had never set. Realizing that the necessary repairs were going to be more difficult than anticipated, the Martins sought professional help.

{¶ 7} Subsequent consultations with contractors revealed that the problem with the wall was structural. The Martins contacted Design Construction, in the hope that the builder would attend to the repairs. Design Construction admitted that an accident during construction affected the garage walls, but denied any

responsibility to make repairs, claiming that the Martins had impaired the condition of the walls by attempting repairs on their own.

{¶ 8} Thereafter, the Martins hired a professional engineer and contractors who found that the subjacent footers were not buried far enough below the frost line. Ultimately, two walls were replaced and the footers were repaired at the Martins' expense.

{¶ 9} In 2005, the Martins brought suit against Design Construction alleging breach of the warranty to perform in a workmanlike manner, breach of the warranty of habitability, and negligence in the construction of the home. A jury returned a general verdict for the Martins of $11,770, as the reasonable cost to repair the defects. The jury also answered interrogatories, two of which are relevant for our purposes. In one, the jury found that Design Construction had been negligent. In the other, the jury found that the Martins had not proved a diminution in the value of their home due to the defects in construction.

{¶ 10} Design Construction appealed, asserting that the Martins had failed to prove a necessary element of damages, namely the difference in the market value of the property with and without the defect. The Ninth District Court of Appeals agreed, holding that proof of the diminution in value of the home was required for a claim of temporary damage to property, i.e., damage that can be repaired, and that the Martins failed to prove such a diminution in value. Accordingly, the court of appeals reversed the trial court's award of damages.

{¶ 11} The Ninth District Court of Appeals found its judgment to be in conflict with the judgments of the First District Court of Appeals in *Adcock v. Rollins Protective Servs. Co.* (1981), 1 Ohio App.3d 160, 1 OBR 471, 440 N.E.2d 548, and the Eighth District Court of Appeals in *Krofta v. Stallard,* Cuyahoga App. No. 85369, 2005-Ohio-3720, 2005 WL 1707013, and certified a conflict to this court. We recognized the conflict and accepted the Martins' appeal. *Martin v. Design Constr. Servs.,* 116 Ohio St.3d 1471, 2008-Ohio-153, 879 N.E.2d 781.

### III

{¶ 12} The issue presented is whether in an action for temporary damage to property, the plaintiff must prove diminution in the market value of the property attributable to the temporary damage. We hold that plaintiffs need not prove diminution in value in order to be awarded damages for temporary injury to property.

{¶ 13} This court first established the measure of damages for temporary injury to real property in *Ohio Collieries Co. v. Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356. In *Ohio Collieries,* two coal companies were found liable for damage to above-ground property caused by the removal of coal underneath—a

so-called subsidence case. Our opinion regarding the proper measure of damages caused by the removal of subjacent support included the following statement:

{¶ 14} "If the injury is of a permanent or irreparable nature, the measure of damages is the difference in the market value of the property as a whole, including the improvements thereon, before and after the injury. If the injury is susceptible of repair, the measure of damages is the reasonable cost of restoration, plus reasonable compensation for the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property before and after the injury, in which case the difference in market value becomes the measure." *Ohio Collieries,* 107 Ohio St. at 248–249, 140 N.E. 356.

{¶ 15} Applying the *Ohio Collieries* rule to this case, the Ninth District held that the Martins were not entitled to recover the cost of their repairs, because they had failed to prove diminution in value attributable to the injury. *Martin v. Design Constr. Servs., Inc.,* Summit App. No. 23422, 2007-Ohio-4805, 2007 WL 2712220, ¶ 23. Although the court of appeals recognized that the *Ohio Collieries* rule could be applied with "some flexibility," the court nevertheless held that diminution in value was a "limiting factor" on the damages award, such that in no case could an award be "grossly disproportionate" to the diminution in value. Id. at ¶ 19–20. The court of appeals held that without proof of this "limiting factor," the Martins could not recover damages, because the jury would not be able to assess whether the costs of repair were "grossly disproportionate" to the diminution in value caused by the injury. Id. at ¶ 19–23.

{¶ 16} Other courts of appeals have applied the *Ohio Collieries* rule similarly, requiring proof of diminution in value as an element of damages for temporary injury to property. See, e.g., *Shell Oil Co. v. Huttenbauer Land Co.* (1997), 118 Ohio App.3d 714, 722, 693 N.E.2d 1168 ("We hold that while [defendant] did present evidence of the cost to repair its property, the failure to present any evidence of the fair market value of the property before and after it was closed by [plaintiff] and allowed to fall into disrepair was fatal to its counterclaim"); and *Reeser v. Weaver Bros., Inc.* (1992), 78 Ohio App.3d 681, 692, 605 N.E.2d 1271 ("when restoration costs exceed the diminution in fair market value, the diminution of fair market value becomes the measure of damages. * * * Moreover, the party seeking restoration costs bears the burden of establishing the diminution in the property's fair market value").

{¶ 17} However, two cases from this court have implicitly limited the holding of *Ohio Collieries.*

{¶ 18} In the first case, decided just ten years after *Ohio Collieries,* the negligence of a natural gas company led to the damage of one church building and the destruction of another. *Northwestern Ohio Natural Gas Co. v. First*

*Congregational Church of Toledo* (1933), 126 Ohio St. 140, 184 N.E. 512. In deciding whether damages had been properly determined, the court began its analysis by noting the difficulty in devising a rule "equally applicable" in all cases of negligent destruction of a building. Id. at 150, 184 N.E. 512. We said that the fundamental purpose of law was "to afford to the person damaged *compensation for the loss sustained.*" (Emphasis sic.) Id.

{¶ 19} In *First Congregational,* the court moved away from strict market-value limits on damages, toward an approach to damages based on the reasonable costs of restoration. With regard to temporary damage, the court in *First Congregational* excised the diminution-in-value portion of the *Ohio Collieries* rule and offered instead the unqualified rule that "the measure of damages is the reasonable cost of restoration or repairs." Id.

{¶ 20} Concomitantly, the court recognized that where restoration of the property was "impracticable," the measure of damages would be the "difference between the reasonable value immediately before the damage and the reasonable value immediately afterwards." Id. The addition of the word "impracticable" to the rule instructs the finder of fact to determine whether repairs are "practicable," meaning "reasonably capable of being accomplished." Black's Law Dictionary (8th Ed.2004) 1210. The import of the word "impracticable," then, is to focus the factual inquiry on the reasonableness of restoration under the circumstances, not on whether the cost of repairs exceeds the change in the market value of the property.

{¶ 21} *First Congregational* held that even in cases in which the property has no market value, damages could still be awarded based on the reasonable cost of restoration, with consideration of the condition of the property prior to the damage. *First Congregational,* 126 Ohio St. at 151, 184 N.E. 512. That holding serves to make the injured party whole by allowing for restoration of the property when the restoration is accomplished for a reasonable cost. Thus, *First Congregational* signaled a shift from a diminution-of-market-value approach to a reasonable-cost-of-repair approach when deciding the measure of compensation for temporary damage to noncommercial real property.

{¶ 22} The second case demonstrating a shift from the *Ohio Collieries* rule is *Apel v. Katz* (1998), 83 Ohio St.3d 11, 697 N.E.2d 600, which addressed the damages available for temporary injury to property from trespass. In *Apel,* the appellant claimed that the trial court erred in not instructing the jury that damages were limited to the diminution in market value owing to the wrongful conduct. Id. at 20, 697 N.E.2d 600. This court disagreed, holding that such a rule was too rigid and did not allow for flexibility in appropriate cases. Id. In *Apel,* as in *First Congregational,* the court's opinion did not cite *Ohio Collieries.* Yet *Apel,* like *First Congregational,* recognized that diminution in market value

would not always provide a sufficient measure of damages. Further, *Apel* held that, under the circumstances in that case, failure to prove diminution in market value was not fatal to the claim for damages. Id.

{¶ 23} Some courts of appeals have applied a rationale similar to that of *First Congregational* and *Apel* in holding that the failure to prove diminution in market value is not fatal to a claim for damages. For instance, the First District Court of Appeals held that the goal of damages is to make the claimant whole, and therefore, even when the cost of repairs exceeds the change in market value attributable to the tort, damages may be recovered. *Adcock*, 1 Ohio App.3d at 161, 1 OBR 471, 440 N.E.2d 548. The *Adcock* court found that failure to prove diminution in value was not fatal to such a claim. Id. The Eighth District Court of Appeals held similarly in *Krofta*, 2005-Ohio-3720, 2005 WL 1707013, wherein it stated: "Usually, evidence regarding the diminution in value is needed to determine the reasonableness of the restoration costs. Failure to present such evidence, however, is not necessarily fatal to a claim in tort for damages to real property." (Citations omitted.) *Krofta*, 2005 WL 1707013, at ¶ 26.

{¶ 24} Now we make express what *First Congregational* and *Apel* implied. The rule expressed in *Ohio Collieries*, that damages for temporary injury to property cannot exceed the difference between market value immediately before and after the injury, is limited. In an action based on temporary injury to noncommercial real estate, a plaintiff need not prove diminution in the market value of the property in order to recover the reasonable costs of restoration, but either party may offer evidence of diminution of the market value of the property as a factor bearing on the reasonableness of the cost of restoration.

{¶ 25} While evidence of loss in market value of the property may be relevant, the essential inquiry is whether the damages sought are reasonable. Either party may introduce evidence to support or refute claims of reasonableness, including evidence of the change in market value attributable to the temporary injury. But proof of diminution in value is not a required element of the injured party's case.

{¶ 26} Applying this rule to the case before us, we hold that the damages awarded by the trial court are supported by the evidence. The trial court's instructions informed the jury that the Martins should be made whole, provided that their expenses were reasonable, and did not instruct the jury that a failure to prove diminution in value would prohibit an award.

{¶ 27} Moreover, the award itself appears reasonable under the circumstances. The jury award of $11,770 equals the amount that the Martins paid to repair the defects to a house purchased for $167,000. Although Design Construction offered evidence that the repairs could have been performed for less, it appears that the jury found that the Martins' expenditures were appropriate. Therefore, it is

reasonable to assume that the damages awarded by the jury represented the reasonable costs incurred by the Martins to repair the deficiencies in the structure of the garage.

## IV

{¶ 28} We answer the certified question in the negative and reverse the judgment of the court of appeals. The court of appeals decided this case on Design Construction's first assignment of error and declined to address the merits of the remaining assignments of error, viewing them as moot. Therefore, this cause is remanded for consideration of the third assignment of error raised by Design Construction in the court of appeals, regarding the statute of limitations.

Judgment reversed
and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

———————

Goldman & Rosen, Ltd., Irving B. Sugerman, and James R. Russell, for appellants.

Pelini, Campbell, Williams & Traub, L.L.C., Craig G. Pelini, and Kristen E. Campbell, for appellee.