BOOTH et al., Appellees and Cross–Appellants,

v.

DUFFY HOMES, INC., Appellant and Cross–Appellee.

[Cite as *Booth v. Duffy Homes, Inc.*, 185 Ohio App.3d 260, 2009-Ohio-6767.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 07AP–680.

Decided Dec. 22, 2009.

Fusco, Mackey, Mathews & Gill L.L.P. and Michael J. Fusco, for appellees and cross-appellants.

Zeiger, Tigges & Little L.L.P., John W. Zeiger, Stuart G. Parsell, and Matthew S. Zeiger, for appellant and cross-appellee.

KLATT, Judge.

{¶ 1} This matter is before us pursuant to an order of remand from the Supreme Court of Ohio in *Booth v. Duffy Homes, Inc.*, 121 Ohio St.3d 358, 2009-Ohio-1392, 904 N.E.2d 535, for consideration of whether our prior judgment in this case should be modified in view of *Martin v. Design Constr. Servs., Inc.*, 121 Ohio St.3d 66, 2009-Ohio-1, 902 N.E.2d 10. For the following reasons, we decline to modify our judgment. However, in view of *Martin*, we modify our decision.[1]

{¶ 2} The procedural and factual background of this case are set out in *Booth v. Duffy Homes, Inc.*, Franklin App. No. 07AP–680, 2008-Ohio-5261, 2008 WL 4517808. Therefore, we need not repeat that background here.

{¶ 3} The Booths asserted a claim against Duffy Homes for breach of warranty "against inadequate lot drainage." They sought money damages for injury to their home resulting from that breach. Specifically, the Booths sought to recover the costs to restore the property to the warranted condition. The Booths presented evidence that the cost to restore the property to the warranted condition was $300,000. It was undisputed that the Booths had purchased the home for $410,000. The trial court was obligated to instruct the jury on the correct measure of damages applicable to the Booths' claim.

{¶ 4} In our original majority opinion, we held that the trial court failed to properly instruct the jury on the measure of damages applicable to the Booths' breach-of-warranty claim. We held that *Ohio Collieries Co. v. Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356, stated the general rule for the measure of damages for injuries to real property. That rule is as follows:

> If the injury is susceptible of repair, the measure of damages is the reasonable cost of restoration, plus reasonable compensation for the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property before and after the injury, in which case the difference in market value becomes the measure.

Id. at 248–249, 140 N.E. 356.

{¶ 5} We noted, however, that the diminution in market value discussed in *Ohio Collieries* is not necessarily an absolute limit on the recovery of damages for injury to real property. Where such a limitation would prevent fair compensa-

---

1. *Martin* does not require us to reconsider that portion of our judgment that addressed the Booths' conditional cross-appeal. In their conditional cross-appeal, the Booths contended that the trial court erred by granting summary judgment in Duffy Homes' favor on their consumer-sales-practices-act claim. *Martin* does not impact our prior disposition of the Booths' single assignment of error in their conditional cross-appeal.

tion, some courts have upheld damage awards that exceeded the diminution in market value of the real property. See, e.g., *Thatcher v. Lane Constr. Co.* (1970), 21 Ohio App.2d 41, 50 O.O.2d 95, 254 N.E.2d 703; *Northwestern Ohio Natural Gas Co. v. First Congregational Church of Toledo* (1933), 126 Ohio St. 140, 184 N.E. 512; *Prawdzik v. II Ent., Inc.*, Franklin App. No. 03AP–1044, 2004-Ohio-3318, 2004 WL 1405570, ¶ 13. Nevertheless, we stated that the relationship between the repair costs and the diminution in market value of the real property remains a benchmark consideration for the trier of fact in awarding damages. Therefore, even when there is evidence that might justify a damage award greater than the diminution in market value, the damage award cannot be grossly disproportionate to the value of the real property. *Booth* at ¶ 21. Because the trial court failed to give a jury instruction based upon *Ohio Collieries*, we held that the trial court erred. Id. at ¶ 26. Accordingly, we sustained Duffy Homes' first assignment of error, reversed the $300,000 judgment in favor of the Booths, and remanded the case to the trial court for further proceedings to determine the amount of compensation the Booths should receive for Duffy Homes' breach of warranty.[2]

{¶ 6} Shortly after the entry of our judgment in this case, the Supreme Court of Ohio decided *Martin*, 121 Ohio St.3d 66, 2009-Ohio-1, 902 N.E.2d 10. In *Martin*, the court addressed the following certified issue:

[I]n an action for temporary damages to a noncommercial real property, [is] a failure to prove the difference between the fair market value of the whole property just before the damage was done and immediately thereafter * * * fatal to the claim?

Id. at ¶ 1.

{¶ 7} In holding that the Martins did not have to prove diminution in market value to recover damages for temporary injury to their real property, the court analyzed *Ohio Collieries* and subsequent case law that addressed the applicable measure of damages for temporary (repairable) injuries to real property.

{¶ 8} Citing *First Congregational Church*, 126 Ohio St. 140, 184 N.E. 512, and *Apel v. Katz* (1998), 83 Ohio St.3d 11, 697 N.E.2d 600, the court noted that since *Ohio Collieries*, it has shifted away from a strict-diminution-of-market-value approach to a reasonable-cost-of-repair approach when deciding the measure of compensation for temporary damages to noncommercial real property. *Martin* at ¶ 17-22. The court explained:

Now we make express what *First Congregational* and *Apel* implied. The rule expressed in *Ohio Collieries*, that damages for temporary injury to property

---

**2.** Duffy Homes does not challenge the liability finding in this appeal.

cannot exceed the difference between market value immediately before and after the injury, is limited. In an action based on temporary injury to noncommercial real estate, a plaintiff need not prove diminution in the market value of the property in order to recover the reasonable costs of restoration, but either party may offer evidence of diminution of the market value of the property as a factor bearing on the reasonableness of the cost of restoration.

While evidence of loss in market value of the property may be relevant, the essential inquiry is whether the damages sought are reasonable. Either party may introduce evidence to support or refute claims of reasonableness, including evidence of the change in market value attributable to the temporary injury. But proof of diminution in value is not a required element of the injured party's case.

Id. at ¶ 24-25.

{¶ 9} Pursuant to *Martin*, the measure of damage for temporary injury to noncommercial real property is the reasonable cost of restoration. The trier of fact may consider a variety of factors, including evidence of the change in market value attributable to the temporary injury, in determining whether the damages sought are reasonable.

{¶ 10} Applying this rule to the facts presented in *Martin*, the court noted that the trial court instructed the jury that the Martins should be made whole, provided that their expenses were reasonable. Id. at ¶ 26. The court also noted that the damage award appeared reasonable under the circumstances.

The jury award of $11,770 equals the amount that the Martins paid to repair the defects to a house purchased for $167,000. Although Design Construction offered evidence that the repairs could have been performed for less, it appears that the jury found that the Martins' expenditures were appropriate. Therefore, it is reasonable to assume that the damages awarded by the jury represented the reasonable costs incurred by the Martins to repair the deficiencies in the structure of the garage.

Id. at ¶ 27.

{¶ 11} In the case at bar, we must now determine whether the trial court properly instructed the jury on the applicable measure of damages as articulated in *Martin*. We find that it did not.

{¶ 12} The trial court instructed the jury on the applicable measure of damages as follows:

In a breach of contract case, damages may be awarded in an amount you find is sufficient to place Mr. and Mrs. Booth in the same position in which they would have been if their contract had been fully performed by Duffy Homes.

Damages must, however, be limited to those damages that are reasonably certain and reasonably foreseeable.

You may only award damages that were the natural and probable result of the breach of the contract or that were reasonably within the contemplation of the parties as the probable result of the breach of the warranty in the home purchase contract.

\* \* \*

Finally, members of the jury, you may only award damages whose existence and amount have been proven to you by the plaintiffs with reasonable certainty. You may not award damages that are remote or merely speculative.

{¶ 13} Although the trial court instructed the jury that it could award only damages that were reasonably certain and reasonably foreseeable, it failed to include the critical concept articulated in *Martin*—"the reasonableness of the cost of restoration." As emphasized in *Martin*, "the essential inquiry is whether the damages sought are reasonable" under the circumstances. Id. at ¶ 24–25. Damages could be reasonably foreseeable and reasonably certain, but still be unreasonable because of other factors. These factors might include the value of the real property and the cost to restore the property to the warranted condition. Because the trial court failed to instruct the jury on the correct measure of damages applicable to the Booths' breach-of-warranty claim, we sustain Duffy Homes' first assignment of error.

{¶ 14} In its second assignment of error, Duffy Homes contended that the jury's award of $300,000 was against the manifest weight of the evidence. In our prior decision, we found that assignment of error moot because the trial court erred in its jury charge, thereby requiring a reversal of the damage award and a remand for a new trial on damages. Because we again sustain Duffy Homes' first assignment of error, its second assignment of error remains moot.

{¶ 15} For the foregoing reasons, we sustain Duffy Homes' first assignment of error, thereby rendering moot Duffy Homes' second assignment of error. We reverse the $300,000 judgment in favor of the Booths and remand this matter to the trial court for further proceedings to determine the reasonable cost of restoration of the Booths' real property.

Judgment reversed
and cause remanded.

SADLER, J., concurs.

FRENCH, P.J., dissents.

FRENCH, P.J., dissenting.

{¶ 16} Being unable to agree with the majority's conclusion that the trial court's jury instruction regarding damages constitutes reversible error, I respectfully dissent.

{¶ 17} In our original opinion, I dissented from that portion of the majority opinion regarding Duffy Homes' first assignment of error, in which Duffy Homes argued that the trial court failed to instruct the jury on the correct measure of damages consistent with *Ohio Collieries Co. v. Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356. Specifically, Duffy Homes argued that under *Ohio Collieries,* the amount of damages recoverable for temporary injury to real property must be capped at the diminished value of the property, such that a plaintiff may not recover restoration costs that exceed the difference between the pre-injury and post-injury market value of the property. Alternatively, Duffy Homes argued that where restoration costs have been allowed to exceed the diminution in property value, they may not be grossly disproportionate to the diminution or the value of the property. Under both theories, Duffy Homes maintained that the absence of evidence of the diminution in market value of the Booths' home was fatal to the Booths' recovery of damages.

{¶ 18} In our original opinion, the majority concluded that the trial court had failed to properly instruct the jury on the measure of damages for the Booths' breach-of-warranty claim, stating that while "the diminution in market value discussed in *Ohio Collieries* may not be an absolute limit on the recovery of damages * * *, the relationship between the repair costs and the diminution in market value of the real property remains a benchmark consideration for the trier of fact in awarding damages." I respectfully dissented from the majority's position based on the flexibility with which Ohio courts have applied the *Ohio Collieries* damage formulation, the absence of any evidence in the record regarding the market value of the Booths' home with or without adequate drainage, and the trial court's discretion to determine whether evidence presented is sufficient to warrant a particular instruction. I concluded that the trial court's instruction, setting forth a correct, general statement of the law applicable to breach-of-contract claims, did not mislead the jury. I further concluded that the $300,000 judgment in favor of the Booths was not against the manifest weight of the evidence.

{¶ 19} The Supreme Court of Ohio accepted the Booths' appeal on a single proposition of law, which stated as follows:

The general rule expressed in an action for breach of contract in *Ohio Collieries Co. v. Cocke* [ (1923) ] (1938), 107 Ohio St. 238[, 140 N.E. 356] limiting damages for injury to real property by the diminution in value caused by the breach does not apply to a claim where the physical damage has not yet

occurred and the damages sought are for the cost of preventative remedial measures.

Simultaneous with the court's acceptance of this proposition of law, the court remanded this matter for consideration of whether our judgment should be modified in view of *Martin v. Design Constr. Servs., Inc.*, 121 Ohio St.3d 66, 2009-Ohio-1, 902 N.E.2d 10.

{¶ 20} For the most part, I agree with the majority's discussion of *Martin*, in which the Supreme Court held that a plaintiff need not prove diminution in value to recover reasonable costs of restoration as a result of temporary damage to real property, but I disagree with the majority's conclusions regarding the effect of *Martin* on this appeal. *Martin* essentially rejects the arguments raised by Duffy Homes under its first assignment of error. Certainly, under *Martin*, the trial court was not required to instruct the jury that recoverable restoration costs were limited to an amount equal to the diminution in market value of the Booths' home as a result of the inadequate drainage. Thus, the trial court was not required to give the Duffy Homes' proposed jury instruction setting forth the *Ohio Collieries* damages formulation. Furthermore, under *Martin*, it cannot be said that the absence of evidence regarding diminution in value was fatal to the Booths' claim of damages because *Martin* is clear that evidence of diminution in value is not required. Nevertheless, on remand, the majority again concludes that the trial court erred in its jury instructions, not by refusing an instruction based on *Ohio Collieries*, but by not explicitly instructing the jury that damages based on restoration costs must be reasonable.

{¶ 21} Prior to the Supreme Court's remand in this matter, neither party argued that the trial court erred by not including in its instructions an express requirement that the *amount* of the repair costs must be reasonable. Instead, the Booths' proposition of law accepted by the Supreme Court concerned only the applicability of the *Ohio Collieries* cap of restoration costs. Moreover, the focus of Duffy Homes' arguments to the trial court and on appeal to this court has been that the trial court erred by not instructing the jury that restoration costs could not exceed the diminution in value of the Booths' home or, alternatively, could not be grossly disproportionate to the diminution in value. Under both theories, Duffy Homes' primary contention was that in the absence of evidence of diminution in value, the Booths failed to establish damages. *Martin* rejected those arguments.

{¶ 22} Because the Supreme Court rejected a requirement for evidence of diminution in value, because no party assigned as error the absence of an explicit instruction that the amount of the repair costs must be reasonable, and for the additional reasons expressed in my previous dissent, I conclude that the trial court's instructions, which set forth a correct, general statement of the law

applicable to a breach-of-contract claim, did not mislead the jury. Accordingly, I would again overrule Duffy Homes' first assignment of error.