[Cite as *Kerns v. Ohio Dept. of Transp.*, 2017-Ohio-7154.]

| | |
|---|---|
| RONALD KERNS, et al. | Case No. 2015-00261 |
| Plaintiffs | Magistrate Holly True Shaver |
| v. | <u>DECISION OF THE MAGISTRATE</u> |
| OHIO DEPARTMENT OF TRANSPORTATION | |
| Defendant | |

{¶1} Plaintiffs brought this action alleging claims for trespass, unlawful clearing of vegetation in violation of R.C. 901.51, and unconstitutional taking of private property. Plaintiffs also seek attorney fees. The court denied plaintiffs' motions for a temporary restraining order and for a preliminary and permanent injunction on March 31 and August 6, 2015, respectively. The case proceeded to trial before the undersigned magistrate on the issues of both liability and damages.[1]

{¶2} Plaintiffs, Ronald Kerns and Margaret Ruth Leslie, own property located at 2536 Johnnycake Road, in Mogadore, Ohio. The property is approximately 18 acres, most of which is densely wooded, and includes a federally protected wetland with vernal pools that provide a habitat for salamanders.

{¶3} Kerns received a letter dated April 16, 2014, from defendant, Ohio Department of Transportation (ODOT), advising him of its plan to replace the Johnnycake Road bridge over the feeder canal tributary located adjacent to plaintiffs'

---

[1]On January 20, 2017, defendant filed a motion to supplement the record, along with a proposed Exhibit I, the purported minutes of a January 8, 2015 meeting of the Portage County Board of Commissioners, during which a resolution was adopted addressing the bridge project at issue. On January 25, 2017, plaintiffs filed a response in opposition to the motion, and a motion for reconsideration. Upon review, the magistrate finds that the proffered exhibit cannot be subject to cross-examination by plaintiffs at this late date. Accordingly, defendant's motion is DENIED, and Exhibit I is NOT ADMITTED. Plaintiffs' motion for reconsideration is also DENIED as moot.

property. (Plaintiffs' Exhibit 4.) The letter stated that ODOT was replacing the bridge on behalf of Portage County as part of the Ohio Bridge Partnership Program, and that the construction was planned for summer 2015. (*Id.*) Per the letter, representatives from Mead & Hunt, Inc., and Lawhon and Associates, Inc., were going to enter upon plaintiffs' property on behalf of ODOT to obtain certain field data required for the project. The letter stated: "Section 5517.01 and 163.03 of the Ohio Revised Code authorize such entries [onto private property], but also require that reimbursement be made for any actual damage resulting from such work. Our representatives have received strict instructions concerning the preservation of private property and public lands. However, in the event that any valuable vegetation must be cleared in order to accomplish our work, you will be so notified and informed as to the procedure to follow in preparing a claim for reimbursement. In all cases, however, removal of vegetation as well as other damage will be held to a minimum. If, at any time, you feel that our representatives have not given proper attention to private property, please notify us at once." (*Id.*) The letter was written by Chad Root, P.E., District 4 Local Programs Manager.

{¶4} On December 26, 2014, crews from the Portage County Engineer's Office appeared at the project site and cut down trees. According to plaintiffs, damage was done in the following ways: heavy equipment left tire marks on their property and compacted the soil; trees were cut down both inside the right-of-way on Johnnycake Road and outside of the right-of-way on their property; a wood chipper was used to dispose of certain cut trees and piles of wood chips were left in the vernal pools, resulting in ecological damage to the wetlands on plaintiffs' property; and, large drag marks were left on plaintiffs' property when certain trees were removed. Plaintiffs assert that trees and vegetation on their property were damaged and or removed without either their permission or the permits required by the EPA.

{¶5} At trial, the parties presented evidence including the testimony of several witnesses. The parties dispute the number of trees that were removed, whether those

trees were within the right-of-way, whether ODOT was responsible for the removal of the trees, and the monetary value of the trees that were removed.

{¶6} Ron Kerns testified that he purchased his property for $45,000 in 2005, and then built a house on it, which sits approximately 650 feet from Johnnycake Road. Kerns estimated that the 18-acre property contains hundreds of trees, and that the majority of the property consists of federally protected wetlands. Kerns testified that the work trucks that performed the tree removal and damaged his property were from Portage County. Kerns took photographs which depict large tire ruts that appear to have been caused by earth moving equipment, as well as a poorly cut tree stump of a swamp white oak tree that Kerns testified was located partially inside and partially outside of the right-of-way. (Plaintiff's Exhibit 5.1-5.12.) Kerns testified that a hickory tree that was cut down was not located inside the right-of-way, but, rather, on his property.[2] Kerns added that after trees were cut, a wood chipper was used to grind up the trees, and the resulting wood chips were dumped into the vernal pools that provide a habitat for salamanders. Kerns testified that the wood chips did not wash away and that they have damaged the vernal pools.

{¶7} Margaret Ruth Leslie testified that once she and Kerns discovered the damage to their property she located the letter from ODOT and called Chad Root, who informed her that Brian Peck, another ODOT employee, would contact her. Peck walked the property with Leslie to inspect the damage. According to Leslie, Peck told her that ODOT needed to remove certain trees prior to the start of the bridge project because the Indiana Bat, a protected species, roosts in trees during the summer months and ODOT is prohibited from cutting down such trees during the spring and summer months. According to Leslie, Peck told her that ODOT had requested that

---

[2]R.C. 4511.01(UU) (2) defines Right of Way as follows: "A general term denoting land, property, or the interest therein, usually in the configuration of a strip, acquired for or devoted to transportation purposes. When used in this context, right-of-way includes the roadway, shoulders or berm, ditch, and slopes extending to the right-of-way limits under the control of the state or local authority."

Portage County remove certain trees, and he expected that Portage County would perform the work in a professional manner.  Peck suggested that Leslie leave the wood chips where they were and advised her to contact Portage County for compensation and repair.  Leslie testified that the large hickory was on her property, and that the swamp white oak was partially inside the right-of-way and partially on her property. Leslie testified that the right-of-way is 30 feet from the centerline of the road on either side of the road. Leslie believes a total of nine trees were removed from her property.

{¶8} Chad Root testified that he was the project manager for the Johnnycake Road bridge replacement.  According to Root, the Ohio Bridge Partnership Program was initiated by the Governor to access federal funds to repair and replace bridges throughout the state.  ODOT's Central Office selected the bridges for the program, then evaluated the status of the bridges and coordinated with county engineers and environmental specialists.  Although Plaintiffs' Exhibit 8 was presented at trial to support plaintiffs' argument that Portage County and ODOT worked as partners on the bridge project, Root testified that before federal funding became available, Portage County was going to construct the bridge on its own.  According to Root, once the bridge partnership was announced, Plaintiff's Exhibit 8 was essentially meaningless.  Root testified that ODOT took complete responsibility for the bridge project once it became federally funded.

{¶9} The Johnnycake Road bridge deck had to be removed and replaced, and ODOT eventually selected a contractor to perform the work.  Root testified that typically the contractor would remove any trees that had to be taken down prior to bridge work. However, ODOT had identified three trees that were potential roosts for the Indiana Bat, and since the Indiana Bat is a protected species, ODOT had to remove those three trees during the winter months, when the bats were hibernating in caves.  Accordingly, Root asked Portage County to remove those three trees because the contractor would

not be selected until March 2015, and if the Indiana Bat trees were not removed in the winter, the bridge project would have been delayed until October 2015.

{¶10} Root testified that he asked Portage County to remove three trees from the project area, as noted in Plaintiff's Exhibit 13.1 and 13.2: a hickory tree, greater than 18 inches in diameter, an oak tree that was greater than 50 inches in diameter, and a dead tree trunk.[3] Although Root knew that Portage County had removed trees before, he did not have any independent knowledge of Portage County's tree removal skills. Root acknowledged that Portage County removed more than the three trees that ODOT had marked for removal. Root testified that he believed that the three trees that he asked to be removed were all within the right-of-way. When Root learned that more than those three trees had been removed, he sent Brian Peck to look at the site and report back. Root testified that the Johnnycake Road right-of-way is 60 feet wide.

{¶11} Root added that the letter in Plaintiff's Exhibit 4 did not specifically pertain to tree removal, but, rather, it was written to let property owners know that the environmental consultants would be out to gather information, which occurred on May 13 and July 18, 2014, per Plaintiffs' Exhibit 14. According to Root, all necessary permits for the bridge project were obtained by ODOT's environmental section.

{¶12} Brian Peck testified that he is an environmental specialist for ODOT, District 4. Prior to any tree removal, Peck had performed a field review and created a diagram. (Plaintiff's Exhibit 13.2.) Peck marked three trees to be removed: a dead tree that was south of the creek; a hickory tree that was larger than 18 inches in diameter, and a swamp white oak that was larger than 50 inches in diameter. He wrapped those three trees in pink ribbon with a long tag. Peck testified that the right-of-way was not staked when he marked the trees for removal, but he believed that the trees he had marked were within the right-of-way. Peck testified that Lawhon and Associates had

---

[3]Plaintiffs are not making a claim for removal of the dead tree trunk.

recommended one tree to be removed in its report, but when he visited the site himself, he found two other trees that needed to be removed.

{¶13} When Peck was sent to plaintiffs' property after the trees had been removed, he observed that heavy equipment had been on plaintiffs' property, that the wetland was disturbed, that wood chips had been cast into the vernal pools, that trees had been cut down, and that vegetation had been disturbed.  Peck took photographs of the area.  (Defendant's Exhibit F.)  According to Peck, even though he had marked only three trees for removal, other nearby trees had also been removed.  Peck testified that after the right-of-way was staked, it was discovered that the swamp white oak was partially inside and partially outside of the right-of-way, and the large hickory was outside of the right-of-way on plaintiffs' property.  Peck also testified that the ecological report by Lawhon and Associates indicates a "study area" on the map, but the study area is larger than the right of way, which was a total of 60 feet wide (30 feet on either side of the middle line of the roadway).  Peck testified that he learned that after Portage County did their work, some ash trees had been removed because of the Emerald Ash Borer infestation.  Peck believed that the wood chips should have been removed from the site and disposed of.  Peck testified that the Portage County Engineer's Office should have performed a survey to determine whether the trees that had been marked were located in the right-of-way.  Peck testified that there were no permit violations on the bridge project.

{¶14} Plaintiffs' expert witness, Jason Knowles, testified that he has been a certified arborist for 22 years.  Knowles testified that plaintiffs retained him to determine an appraisal value of the trees that had been removed.  Knowles walked the property with plaintiffs and took photographs.  Plaintiffs' Exhibit 17 is his consulting report.  Knowles relied on the Trunk Formula Method, a cost approach, to determine a value of the trees that were cut down.  Knowles testified that under the Trunk Formula Method, a core value for each type of tree is provided.  According to Knowles, Ohio has its own

guide for what the value of a tree should be. Knowles examined the tree stumps to determine the species and size of the trees that were removed. Knowles determined that a total of 18 trees were removed, in an area that was approximately 60 feet long by 60 feet wide. Although Knowles observed damage to the vernal pools from the wood chips, and damage to the soil due to the heavy machinery tracks, he did not determine a value for either soil compaction or vegetation that was removed. Knowles testified that the value of the trees that were removed totaled $18,200.

{¶15} Knowles acknowledged on cross-examination that there is more than one way to appraise the value of removed trees. Knowles believed that the Trunk Formula Method was the best way to appraise the trees in this matter. Knowles also acknowledged that plaintiffs subjectively valued the removed trees and the damage to their property very highly. Knowles testified that according to the guide book, when the cost approach renders an excessive value, the market approach should be used. Knowles also stated that although he noted that two green ash trees were removed, and he assigned them a landscape value, they were most likely removed because of the threat of the Emerald Ash Borer, which would reduce the ash trees' value to $0, if, in fact, those trees were infested. According to Knowles' report, three bitternut hickory trees, two green ash, one swamp white oak, and twelve saplings were removed. Knowles did not determine the right-of-way when he evaluated the value of the trees.

{¶16} Plaintiffs' expert witness, Mark Dilley, testified that he owns an ecological and wetland consulting firm. Dilley and several staff members went to plaintiffs' property for a site visit. They collected data from the property and then prepared maps and a report. (Plaintiffs' Exhibit 19.) According to Dilley, four removed trees were within the right of way and another ten were scattered outside of the right of way. Dilley testified that photo 7 in Plaintiff's Exhibit 19.13 shows the swamp white oak, which was located on the line of the right-of-way. On cross-examination, Dilley stated that he did not determine the right of way himself, but, rather, he relied on the stakes that were

present when he did his evaluation.  Dilley opined that although wood chips had been placed in the vernal pool, the ecological system as a whole would not be extensively impacted by the wood chips.

{¶17} Peter Dunn, a licensed surveyor in the state of Ohio, testified that he was hired by plaintiffs to perform a survey of their property.  On March 8, 2015, Dunn measured the right-of-way from Johnnycake Road to plaintiffs' property.  According to Dunn, the right-of-way is 30 feet from the center line of the roadway.  Dunn placed a wooden stake with an orange ribbon on plaintiffs' property to designate the right-of-way. Dunn testified that there was one stump in the right-of-way, visible on Plaintiff's Exhibit 2.  Dunn also testified that one stump was partially in the right of way and partially outside of the right of way, and marked it with a check mark.

{¶18} Charles Flagg, defendant's expert, testified that he is a real estate appraiser.  Flagg was asked by defendant to determine what the value of plaintiffs' property was both before and after the trees had been cut and whether the damage to the plaintiffs' property had a positive, negative, or no impact on its market value.  As a result of his appraisal, Flagg concluded that the market value of the real estate prior to the damage was the same as after the damage; essentially, in that the property was densely wooded, the loss of trees was not substantial and had no effect on the market value of the property.  On cross-examination, Flagg acknowledged that he is a real estate appraiser, not an arborist, that he did not enter onto the property to see the damage, and that he relied on public records and taking photos of the property from the roadway to make his report.  Flagg also admitted that he did not consider the value of the trees as lumber; he simply estimated the fair market value of the property with the trees intact versus the trees being taken away.

## CLAIM 1:  TRESPASS

{¶19} A trespass upon real property occurs when a person, without authority or privilege to do so, physically invades or unlawfully enters the private premises of

another and damages directly ensue. *See Linley v. DeMoss*, 83 Ohio App.3d 594, 598 (10th Dist.1992). The non-consensual entry may be intentional or negligent. *Id.* "The essential elements necessary to state a cause of action in trespass are: 1) venue, 2) an intentional act by defendant whereby defendant enters upon land in possession of another *or causes a thing or person to do so*, 3) such act being unauthorized, the defendant having no express or implied permission to enter the property of the possessor, nor any easement, license, right-of-way or other grant of ownership permitting the entrance in question." (Emphasis added.) *Blashinsky v. Topazio*, 11th Dist. Lake No. 11-113, 1987 Ohio App. LEXIS 6445 (April 17, 1987). A trespass occurs when an individual enters onto the land of another, cuts down, and removes trees. *See Shanklin v. Lowman*, 3rd Dist. Logan No. 8-10-07, 2011-Ohio-255, ¶ 2.

{¶20} ODOT has a privilege to cut, trim, or remove any grass, shrubs, trees, or weeds growing or being within the limits of a state highway. *See* R.C. 5501.42. And R.C. 5517.01 provides that ODOT may enter upon private land to conduct a survey for plans and specifications for proposed projects. In addition, the entry pursuant to 163.03 is not a trespass. *Cleveland Bakers Union v. State*, 3 Ohio App.3d 57 (1981). The evidence shows that ODOT gave notice to plaintiffs in the April 16, 2014 letter that workers from Lawhon and Associates would enter upon their property to do an environmental survey, which occurred on May 13 and July 18, 2014. (Plaintiff's Exhibit 14.) Accordingly, the magistrate finds that during those times, ODOT had a privilege to enter plaintiffs' property and, therefore, did not commit a trespass.

{¶21} However, the evidence also shows that ODOT marked three potential Indiana Bat roosting trees for removal, on or about December 18, 2014. (Plaintiff's Exhibit 13.1.) Although Peck believed that the trees he had marked were located in the right-of-way, he admitted that the right-of-way was not staked at the time he marked the trees. Although ODOT is not liable for cutting down vegetation within the right-of-way,

plaintiffs may prevail if they prove that ODOT entered their land and removed trees outside of the right-of-way on their property.

{¶22} The evidence shows that no contractor had been selected for the bridge project during the months that ODOT was required to remove Indiana Bat trees, and ODOT asked Portage County to remove those trees. (Plaintiff's Exhibit 9; testimony of Root and Peck). The evidence also shows that Portage County removed those three trees, in addition to other trees both inside and outside of the right-of-way. However, the magistrate finds the testimony of Root and Peck was credible when they stated that ODOT directed Portage County to remove only the three Indiana Bat trees that had been marked.

{¶23} Upon review of the evidence, the magistrate finds that ODOT directed Portage County to remove the three Indiana Bat trees, and that although ODOT assumed that Portage County would conduct a survey before the trees were removed, Portage County did not do so. Plaintiffs have proven, by a preponderance of the evidence, that the large bitternut hickory tree was located on their property, and that the swamp white oak straddled the right-of-way boundary. Accordingly, the magistrate finds that ODOT committed a trespass on plaintiffs' property when it directed Portage County on its behalf to remove the Indiana Bat trees that were located outside of the right-of-way. The magistrate finds that ODOT did not have authority or privilege to order that trees outside of its right-of-way be cut down. Accordingly, the magistrate recommends judgment in favor of plaintiffs on their claim of trespass with regard to the swamp white oak and the large bitternut hickory tree.

**CLAIM 2:  UNLAWFUL CLEARING OF VEGETATION**

{¶24} R.C. 901.51 states: "No person, without privilege to do so, shall recklessly cut down, destroy, girdle, or otherwise injure a vine, bush, shrub, sapling, tree, or crop standing or growing on the land of another or upon public land.

{¶25} "In addition to the penalty provided in section 901.99 of the Revised Code, whoever violates this section is liable in treble damages for the injury caused."

{¶26} The Supreme Court of Ohio has adopted the definition of recklessness found in R.C. 2901.22(C) to assess liability under R.C. 901.51. *See Wooten v. Knisley*, 79 Ohio St.3d 282, 289-90. R.C. 2901.22(C) provides that: "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist."

{¶27} With regard to this claim, the magistrate finds that plaintiffs have failed to show that ODOT acted recklessly when it requested that Portage County remove the three marked Indiana Bat trees. ODOT clearly had a privilege to remove trees and brush in the right-of-way of the Johnnycake Bridge. In addition, even with regard to the trees that were removed on plaintiffs' property, ODOT's action of directing Portage County to remove the Indiana Bat trees was not reckless, as that term is defined above. Although Portage County's workmanship in tree removal was not aesthetically pleasing, and Portage Count removed more trees than ODOT asked it to, the evidence does not show that ODOT acted recklessly when it directed Portage County to remove three Indiana Bat trees. Accordingly, the magistrate finds that plaintiffs have failed to prove by a preponderance of the evidence that ODOT's actions constitute a violation of R.C. 901.51.

## CLAIM 3:  UNCONSTITUTIONAL TAKING OF PRIVATE PROPERTY

{¶28} A "taking" is "'[a]ny direct encroachment upon land, which subjects it to a public use that excludes or restricts the dominion and control of the owner over it * * * for which he is guaranteed a right of compensation by section 19 [Article I of the Ohio

Constitution].'" *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6617, ¶ 59, quoting *Norwood v. Sheen*, 126 Ohio St. 482 (1933), paragraph one of the syllabus. "In the absence of a showing of physical displacement, a plaintiff 'might recover by showing that the damage was directed at his particular property * * * or by showing that the damage was so extreme as to amount to a substantial deprivation of all the rights of ownership.'" *Sommer v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 13AP-848, 2014-Ohio-5663, ¶ 13, quoting *McKee v. Akron*, 176 Ohio St. 282, 285 (1964), *overruled on other grounds, Haverlack v. Portage Homes, Inc.*, 2 Ohio St.3d 26, (1982). "However, the mere fact that the 'property is rendered less desirable as a result of the governmental activity does not in and of itself constitute a taking so as to entitle the owner thereof to compensation.'" *Id.*

{¶29} Upon review of the evidence presented, the magistrate finds that ODOT was responsible for the removal of one and one-half trees on plaintiffs' property, outside of the right-of-way. Although trees were removed, the magistrate finds that removal of those trees was not so extreme as to amount to a substantial deprivation of all of the rights of ownership of plaintiffs' property. Accordingly, the magistrate finds that plaintiffs have failed to prove by a preponderance of the evidence that ODOT committed an unconstitutional taking.

{¶30} With regard to the other trees that plaintiffs seek compensation for, the magistrate finds that plaintiffs have failed to prove, by a preponderance of the evidence, that ODOT directed Portage County to cut down any trees other than the three Indiana Bat trees. The evidence shows that Portage County cut down additional trees, including two green ash trees, two, 12-inch diameter bitternut hickory trees, and twelve saplings. However, the magistrate finds that ODOT did not direct Portage County to take down those trees. The only defendant in the Court of Claims is the state of Ohio. R.C. 2743.03(A). The evidence shows that Portage County took it upon itself to cut certain trees down, without having been requested to do so by ODOT. In that ODOT

tagged three trees for removal and directed Portage County to remove only those three trees, the magistrate finds that plaintiffs have failed to prove by a preponderance of the evidence that ODOT is responsible for any damages other than the removal of the Indiana Bat trees that were located on their property.

## FAILURE TO OBTAIN NECESSARY PERMITS

{¶31} Although plaintiffs assert that ODOT did not obtain the necessary permits for the Johnnycake Road bridge project, the magistrate finds the testimony of Root and Peck credible and persuasive that all necessary permits were eventually obtained. Plaintiffs specifically argued that permits were not obtained prior to the damage to their property, however, both Root and Peck testified that there were no permit violations with regard to the Johnnycake Road bridge once the project was completed. Accordingly, the magistrate finds that plaintiffs have not proven by a preponderance of the evidence that any delay in obtaining permits resulted in compensable harm to them.

## ATTORNEY FEES

{¶32} "Pursuant to the general 'American rule,' the prevailing party cannot recover attorney fees as part of the cost of litigation in the absence of statutory authorization." *Sutherland v. Nationwide Gen. Ins. Co.*, 102 Ohio App.3d 297, 299 (10th Dist.1995), citing *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.*, 46 Ohio St. 2d 177, 179 (1976). Plaintiffs have pointed to no statutory authority for an award of attorney fees in this matter. Accordingly, the magistrate finds that plaintiffs are not entitled to an award of attorney fees.

## DAMAGES

{¶33} "When a party trespasses and cuts trees that are part of a woodland mix and not unique, the ordinary measure of the harm is the difference in the fair market value before and after the cutting. *Blust v. Lamar Adver. Co.*, 157 Ohio App. 3d 787,

2004-Ohio-2433, at ¶ 37.  There is an exception, however, in which restoration costs may be recovered in excess of diminution in fair market value when real estate is held for non-commercial use, when there are reasons personal to the owner for seeking restoration, and when the diminution in fair market value does not adequately compensate the owner for the harm done.  *Jones v. Dayton Power & Light Co.*, 2nd Dist. Greene No. 1994 Ohio App. LEXIS 5608 (Dec. 14, 1994), citing *Thatcher v. Lane Const. Co.*, 21 Ohio App.2d 41 (10th Dist.1970), and *Denoyer v. Lamb*, 22 Ohio App.3d 136 (1st Dist.1984).  Destruction of trees that form part of an ecological system of personal value to the owner justifies restoration cost as a measure of damages.  *See Denoyer, supra.*  In addition, "[i]n an action based on temporary injury to noncommercial real estate, a plaintiff need not prove diminution in the market value of the property in order to recover the reasonable costs of restoration, but either party may offer evidence of diminution of the market value of the property as a factor bearing on the reasonableness of the cost of restoration."  *Martin v. Design Constr. Servs.*, 121 Ohio St.3d 66 (2009), paragraph one of the syllabus.  "Diminution in value is a factor that may be considered in determining whether restoration costs are reasonable, but it is not itself an element of damages that must be considered."  *Hartman v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 08AP-599, 2009-Ohio-469, ¶ 7, citing *Martin, supra*.  "In cases involving trespass to real property that results in the removal of trees or other vegetation, a landowner is entitled to recover reasonable restoration costs, plus the reasonable value of the lost use of the property between the time of the injury and the restoration."  *Hartman, supra*, citing *Fantozzi v. Henderson*, Cuyahoga App. No. 87270, 2006-Ohio-5590.

{¶34} Plaintiffs' expert arborist testified that the swamp white oak had an appraised value of $8,498, and that the large hickory tree had an appraised value of $4,345.  The magistrate finds that the testimony of Knowles was credible and that the Trunk Formula Method is an acceptable way of determining damages in this matter.

The magistrate notes that the appraised value of the trees may not necessarily be the same as restoration cost. The magistrate also notes that defendant's expert testified that there was no change in the market value of plaintiffs' property as a result of the tree cutting, and plaintiffs' land contains hundreds of trees, as testified to by Kerns. However, the magistrate is persuaded that the trees had some value, especially the swamp white oak, in that it was located in a federally protected wetland on plaintiffs' property, and plaintiffs testified credibly that the trees form part of an ecological system of personal value to them. The magistrate finds that plaintiffs are entitled to reasonable damages with regard to the swamp white oak and the large hickory tree, and that although defendant's expert testified that there was no diminution in value to the property, that opinion is only one factor that must be considered in this matter. Accordingly, the magistrate recommends judgment in favor of plaintiffs in the amount of $12,868, which consists of $12,843 in reasonable restoration costs and reasonable value of the lost use of the property between the time of injury and the restoration, plus the $25 filing fee.

{¶35} *A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i). If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed. A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
HOLLY TRUE SHAVER
Magistrate

cc:

Kevin J. Breen
3500 West Market Street, Suite 4
Fairlawn, Ohio 44333

Christopher L. Bagi
Christopher P. Conomy
Assistant Attorneys General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

**Filed July 25, 2017**
**Sent to S.C. Reporter 8/9/17**